**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY | : | CIVIL ACTION NO. |
| | : | 3:00CV1180 (CFD) |
| VS. | : | |
| | : | |
| BRUCE MORTENSEN, DAVID H. DONALDSON, | : | |
| PATRICIA BLAND, JAMES WARNER, SR., | : | |
| JAMES L. BIRARELLI, JAMES L. BIRARELLI, | : | |
| INC., BONNIE JOHNSON, JOHNSON AGENCY | : | |
| INCORPORATED AND ROBERT YORK | : | April 4, 2007 |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF SUPPLEMENTAL**
**MOTION FOR SUMMARY JUDGMENT**

_____The plaintiff, Nationwide Mutual Insurance Company ("Nationwide"), brought this declaratory judgment action to determine whether liability insurance coverage was available to the defendants in connection with other pending lawsuits (the "Liability Lawsuits"). The Liability Lawsuits were brought by Nationwide against the defendants, a group of insurance agents formerly affiliated with Nationwide, for the agents' conduct in connection with their agency relationships with Nationwide.

–1–

Procedural Background

On August 9, 2000, Nationwide filed a motion for summary judgment.  In response, the defendants filed a Rule 56f motion requesting additional time in which to conduct discovery and respond to the motion.

On April 26, 2001, after significant and contentious discovery motions and proceedings [see Docket #77] Nationwide refiled its summary judgment motion. [Docket #62].  Significant briefing ensued.

On September 24, 2002, the Court issued its Ruling on Motion for Summary Judgment ("Ruling") [Docket #109] in which it granted Nationwide's motion in part issuing a declaratory judgment that "Nationwide is not obligated to defend the Liability Lawsuits..."  The Court denied the motion "without prejudice to Nationwide moving for summary judgment at a later date as to the defendants' damages claims..."  Ruling n.16,17,18.  Since the Ruling, this case has been subjected to a series of stays and unsuccessful pretrial settlement conferences.

Nationwide respectfully submits that the Court should now consider whether summary judgment should be granted as to the defendants' counterclaims.

Facts Relating to the Defendants' Counterclaims

The defendants August 14, 2000 Answer, Affirmative Defenses and

Counterclaim [Docket # 12] contains a one count counterclaim which asserts that Nationwide withdrew or chose not to assert certain claims in the Liability Lawsuits(Counterclaim ¶¶ 19, 20) and failed to pay defense costs (Counterclaim ¶21).

The Counterclaim alleges that: "the foregoing conduct of Nationwide constitutes a breach of its fiduciary obligations, its duty of good faith and fair dealing and the promises set forth in its reservation of rights letter."  Counterclaim ¶22.  The Counterclaim alleges that Nationwide chose not to pursue trademark claims based upon "an opinion from legal counsel addressing whether the trademark allegations... were covered under the advertising injury coverage available under the policies." Counterclaim ¶16 (emphasis added).[1]

     (a) Facts Relating to Nationwide's Amendment of Pleadings and
         Assertion of Claims.

     (i) As to Donaldson, Mortensen and Bland

In the First Amended Complaints in the Liability Lawsuits against Donaldson, Mortensen and Bland dated November 8th, 9th and 10th 1999 respectively (Exhs. P, Q

---

[1] It is hard to imagine how a lawsuit can succeed which is explicitly based upon evidence consisting of privileged communications that are not available to the party asserting the claim.

and R),[2] Nationwide alleged (in count two of each of the amended complaints),

violation of the Trademark Act of 1946 (the "Lanham" Act) 15 U.S.C. §1051 et seq.

Nationwide alleged that the defendants used "the words and marks 'Nationwide' and

'Nationwide Insurance'" and that "such usage is likely to cause confusion, mistake and

deception" and to mislead parties "into believing that [defendants] insurance or financial

services originate from, are affiliated with, or are sponsored by Nationwide."  Donaldson

Amended Complaint, Exh. P, ¶47.

    After filing the amended complaints alleging Lanham Act violations, Nationwide's

counsel in the Liability Lawsuits, Bingham Dana, determined that the Lanham Act

claims were not viable.  On April 19, 2000, Jamie L. Fried, Esq. of Bingham Dana wrote

a letter to the agents' counsel, Frank F. Coulom, Jr., Esq. of Robinson & Cole

explaining Nationwide's decision to withdraw its Lanham Act claims.  In the letter,

Attorney Fried stated:

_____

[2]Lettered exhibits are those submitted by Nationwide in its April 26, 2001 Exhibits
to Affidavit of Timothy Patrick Brady in Support of Motion for Summary
Judgment [Docket #66 and 67].  Numbered exhibits are those attached to
defendants' June 19, 2001 Appendix of Exhibits to Defendants' Memorandum
in Opposition to Motion for Summary Judgment and Defendants' Statement of
Material Facts. [Docket #81].

> In our pleadings, we allege that your clients unlawfully continued to use Nationwide's name and logo, a use that created confusion among the public...
>
> Recently, however, it has come to our attention, and to yours as well, that the 2000-2001 SNET White Pages Directory unfortunately includes the names of your clients under Nationwide's listing.  Although the inclusion of your clients' names was clearly an oversight, <u>we believe that such inclusion eliminates our chance of success under the [Lanham] Act</u>.  Accordingly, we believe that withdrawal of those claims is now appropriate.

Exh. 13 (emphasis added).  Defendants conceded that the telephone book advertising was renewed identifying the defendants as Nationwide agents.  Defendants' June 19, 2001 Statement of Material Facts ¶29[Docket #82].

On July 11, 2000, Nationwide, in the Liability Lawsuits filed its request for leave to file an Amended Consolidated Complaint (Exh. G), in which Nationwide sought, among other things, to delete the Lanham Act claims.  On August 15, 2000, a hearing was held in the Liability Lawsuits before the Honorable Donna F. Martinez, United States Magistrate Judge (partial transcript Exh. K).

On August 17, 2000, Magistrate Martinez issued her ruling granting Nationwide's motion to amend: "GRANTED.  The plaintiff's motion to amend is timely . . . the Court is not persuaded that the plaintiffs [Nationwide companies] are motivated by bad faith..." (Exh. J).  The defendants on September 13, 2000, moved for reconsideration (Exh. I), (together with voluminous appendix) and again strenuously argued that Nationwide's

conduct in amending the pleadings was wrongful, in bad faith and violated its fiduciary duties. Magistrate Martinez granted reconsideration and denied the relief requested (Exh. U).

(ii) <u>As to Warner, York, Marcucilli, Birarelli and Johnson</u>

The Nationwide complaints against these agents <u>never</u> alleged trademark or Lanham Act claims or any conduct involving advertising. "The defendants have admitted in their answer that the <u>Warner</u> [et al.] complaints do not allege 'advertising injury' that occurred in the course of advertising." <u>Ruling</u> at 13.

(b) <u>Facts Relating to Reservation of Rights Letters</u>.

The defendants also seek defense costs based upon the reservation of rights letters issued by Nationwide. But the same reservations of rights letters explicitly reserve to Nationwide the right to recoup attorney's fees in the event that the court finds no coverage. The reservation of rights letters state:

> Nationwide will furnish a defense to you under this reservation of rights and reserves its right to terminate its defense of you. Nationwide also reserves its right to recoup from you any all expenses incurred in your defense in the Lawsuit.
>
> . . .
>
> Nationwide agrees to provide a defense to you for the above Lawsuit subject to this reservation of rights and to the express understanding that

in the event it is determined that there is no coverage for this action under
the Policy, Nationwide reserves its right to recover amounts incurred in the
defense in the defense of the action from you including legal fees and
costs.  (Exhs. F-1 through F-8 at p. 2,8.)

Summary Judgment Ruling

    The Court in its Ruling found "as a matter of law, that the Liability Lawsuit

complaints do not create a duty to defend" and issued a declaratory judgment "that

Nationwide is not obligated to defend the Liability Lawsuits . . ."  Ruling 21-22.  The

Court, in a single sentence, was able to dispose of the claims of the Warner, group of

defendants, consisting of five of the eight former agents. [3]  "The defendants have

admitted in their Answer that the Warner complaints do not allege "advertising injury"

that occurred in the course of advertising."  Ruling at 13.  With respect to the

Consolidated Amended Bland Complaint[4] the Court found multiple reasons for holding,

as a matter of law that no coverage was available.  Specifically, the Court ruled that the

allegations did not state a claim of advertising injury, Ruling at 14; that, even if alleged,

the trademark allegations were not covered advertising injury, Ruling at 15-16 or

---

[3]The Ruling defined the "Warner complaints" as those Liability Lawsuits against
  Warner, Birarelli, Johnson, Marcucilli and York. p.5.

[4]Against defendants Bland, Mortenson and Donaldson

conduct which "arose out of defendants' advertising." <u>Ruling</u> at 18.

## DISCUSSION

I.   <u>Nationwide Cannot, as a Matter of Law, be Liable for Deleting or not Asserting Claims</u>.

       The defendants in their counterclaim, assert that Nationwide should be liable because it withdrew or chose not to assert certain claims in the Liability Lawsuits. (Counterclaim ¶¶19,20). This counterclaim must fail for at least four reasons: (1) a party cannot be liable for not pursuing a claim; (2) the unasserted claims would not have triggered coverage; (3) Nationwide and its counsel were obligated to not pursue the trademark claims which were determined to be without merit; and (4) the Court in the Liability Lawsuits has determined that the amendments deleting such claims were not in bad faith.

       A.   <u>A Party Cannot be Liable for not Pursuing a Lawsuit</u>.

       Under the doctrine of vexatious litigation  party may be liable for bringing a lawsuit without merit. A party bringing an unfounded lawsuit can be also be subjected to sanctions under Rule 11 of the Federal Rules of Civil Procedure.  But despite diligent research, no caselaw could be located supporting the proposition, advanced in the defendants' counterclaims, that a party can be liable for <u>not</u> pursuing a lawsuit.

> We know of no power in a trial judge to require a lawyer to submit evidence on behalf of a plaintiff, when he considers he has no cause of action or for any reason wishes to dismiss his action with prejudice, the client being agreeable.  A plaintiff should have the same right to refuse to offer evidence in support of his claim that a defendant has.

Smoot v. Fox, 340 F.2d 301, 303 (6th Cir. 1964).

> No case has been cited to us, nor have we found any, where a plaintiff, upon his own motion, was denied the right to dismiss his case with prejudice. Id. at 302.

In Shepard v. Egan, 767 F Supp. 1158 (D. Mass. 1990) the court stated: "[I]t is difficult, both practically and logistically, to imagine a court denying a plaintiff's motion to dismiss her own  action with prejudice."  Id. at 1165.  It would be equally hard to imagine a court finding a party liable for not pursuing a lawsuit.  The court pondered:

> Could the Court force the plaintiff to continue discovery, or offer evidence?  Can or should the Court require plaintiff to litigate a claim when plaintiff herself has attempted to dismiss it?  Though these questions prove vexatious, the Court need not ponder them at length. Suffice it to say that the Court will not compel plaintiff to pursue a claim that she wishes to dismiss with prejudice.

Id. at 1165

> "[T]he Court welcomes the simplification of some issues and the elimination of others, made possible by plaintiff's decision not to pursue his claims under [a] patent."

Fastener Corp. v. Spotnails, Inc., 291 F. Supp 974, 976 (N.D. Ill. 1968).

The foregoing cases involve a plaintiff's decision not to pursue a case in the

context of dismissal of the case.  Given the existing caselaw of allowing plaintiffs to dismiss with prejudice a case the plaintiff no longer desires to pursue, it would follow that a party would not be liable for not pursuing a case.  The idea of finding liability for <u>not</u> pursuing a claim  - - or dismissing a claim - - is such a strange proposition, that based upon plaintiff's research it appears that it is being advanced here by defendants' counterclaims for the first time ever.  No caselaw could be found supporting such a cause of action.

   B. <u>Even if Nationwide Pursued the Trademark Claims no Coverage Would be Available</u>.

   In the <u>Ruling</u> the Court held that trademark claims would not be covered even if they were alleged in the Liability Lawsuits.  <u>Ruling</u> at 15-17 (trademark allegations are not covered advertising injury) and 17-18 (conduct did not arise from advertising).  Thus, even if Nationwide pursued the trademark claims coverage would not have been available under the insurance policies.   "Moreover, even assuming the Liability Lawsuits did allege trademark or trade dress infringement, courts have construed policies similar to those issued by Nationwide to place claims involving trademark or trade dress infringement outside the scope of 'advertising injury' when 'advertising injury' is defined as 'misappropriation of advertising ideas or style of doing business'."

Ruling at 15 <u>citing</u> <u>Advance Watch Co. Ltd. v. Kemper National Ins. Co.</u>, 99 F.3d 795 (6th Cir. 1999).

      C.  <u>Nationwide and its Counsel Were Obligated not to Pursue Claims Lacking Merit</u>.

In the seven years that this case has been pending, the defendants have never actually suggested that Nationwide had a valid trademark claims against them.  They have argued instead, that Nationwide should pursue such claims in order to make insurance coverage available to them.

Nationwide and its counsel had no duty to pursue claims for the purpose of creating coverage.  They did have a duty, both legal and ethical, to not pursue claims without merit.

Nationwide, in April 2000, recognized that its Lanham Act claims should not be pursued.  Having permitted the telephone directory to be renewed including the defendants' names under Nationwide's listing, it became clear that Nationwide could not succeed on its Lanham Act claims against the agents.  <u>See</u> letter from Jamie L. Freed, Esquire of Bingham Dana to Frank F. Coulom, Jr., Esquire dated April 19, 2000 (Exh. 13).

A key component of any trademark claim is the conduct of the defendant in

creating confusion about the identity and source of goods or services.  Dial-a-Mattress

Operating Corp. v. Mattress Madness, Inc., 841 F. Supp. 1339, 1346 (E.D. N.Y. 1994)

("A demonstrable likelihood of confusion is essential to . . . claims of service mark and

trade name infringement . . .."). Where a plaintiff is responsible for creating such

confusion, it becomes virtually impossible for him to pursue such claims. See, Dwinell v.

Wright Co. v. White House Mill Co., 132 F.2d 822 (2nd Cir. 1943);  ProFitness Physical

Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C, 314 F.3d 62

(2nd Cir. 2002) (laches, consent and acquiescence defenses available).

     D.  The Defendants are Collaterally Estopped from Claiming Nationwide
         Engaged in Bad Faith.

In the Liability Lawsuits, Magistrate Judge Martinez ruled twice that Nationwide's

proposed amendments were not in bad faith and thereby allowed the amendments.

(Exhs. J, K, I, and U).

The defendants chose the Liability Lawsuits as the forum in which to attack

Nationwide's motive in amending their pleadings.  They should not be permitted to re-

litigate this issue here.  "Where litigants have once battled for the Court's decision, they

should neither be required, nor without good reason permitted, to battle again."  Zdanok

v. Glidden Co., 327 F.2d 944 (2nd Cir. 1964).[5]

II.     The Reservation of Rights Letters do not Support Defendants' Counterclaim for Attorney's Fees.

The Counterclaim asserts that Nationwide was obligated, pursuant to its reservation of rights letters to pay defendants' defense costs in the Liability Lawsuits. This claim must fail since under the reservation of rights, Nationwide would be entitled to a return of any legal fees it had paid thus creating a complete setoff of any amounts allegedly due.  See Reservation of Rights letters, Exhs. F-1 through F-8 at pp. 2,8.  The Court found, as a matter of law, that Nationwide was not obligated to defend the Liability Lawsuits, Ruling at 21-22. Here, Nationwide expeditiously brought a declaratory judgment action and promptly moved for summary judgment (August 2000).  The delay in obtaining a ruling was substantially due to defendants' "dilatory discovery tactics . . ." Discovery Orders, Garfinkel, M.J., May 25, 2001 [Docket #77].  In any event Nationwide was not responsible for the delay in the obtaining the declaratory judgment and should

_____

[5]Nationwide acknowledges that this argument was made in its original summary judgment (See, Nationwide's April 26, 2001 Memorandum at pp. 26-27). However the central issue addressed by the Court in the Ruling involved insurance coverage which had been voluminously briefed. The Ruling did not address the collateral estoppel issue. The Court may wish to entertain this issue at this time.

-13-

not be expected to pay defense costs.

III.      Nationwide did not, as a Matter of Law, Breach Either a Fiduciary Duty or the Duty of Good Faith.[6]

(a) Nationwide did not as a Matter of Law have a Fiduciary Duty.

In United States of America v. Brennan, 183 F.3d 139 (2nd Cir. 1999), the Second Circuit held that the relationship between the insurer and policyholder is not a fiduciary one.  Id. at 150.  The Second Circuit explained that a fiduciary relationship involves "discretionary authority and dependancy" as well as control and dominance, whereas the relationship between an insurer and policyholder is a contractual one.  See, Harlech v. Metropolitan Property & Liability Ins. Co., 221 Conn. 185, 190 (1992)(characterizing the relationship between insurer and insured as commercial and contractual rather than a fiduciary).

Nationwide never assumed a fiduciary duty, (i.e. exercised control or dominance) since Nationwide never controlled or directed Robinson & Cole as to how to defend the Liability Lawsuits, and never took "control" of the defense away from the insured.  Nationwide allowed the defendants to choose defense counsel and "expected . . . that

---

[6]These issues were addressed in the original summary judgment briefs though not actually decided in the Summary  Judgment Ruling. See, Nationwide's April 26, 2001 Memorandum at 21-23; Ruling n. 16, 17, 18

Robinson & Cole will maintain its duty of loyalty to you and its professional independence." (Exhibits F-1 through F-8 at p.2). Robinson & Cole has never provided Nationwide with any information or sought guidance from Nationwide. No fiduciary duty could possibly exist under these circumstances.

Even if a fiduciary relationship existed, the conduct alleged, could not amount to a breach. Nationwide in its capacity as plaintiff in the Liability Lawsuits had an adversarial - not fiduciary - relationship with the agents, who had breached contracts and committed tortious acts towards Nationwide. Thus, Nationwide as plaintiff in the Liability Lawsuits is entitled to resort to the courts to protect its interests and plead its case to its advantage.

(b)   Nationwide did not, as a Matter of Law, Breach its Covenant of Good Faith and Fair Dealing

An insurer cannot, as a matter of law, be found to have acted in bad faith in denying a claim where the insured had no right of recovery under the contract. Oulds v. Principal Mutual Life Insurance Co., 6 F.3d 1431 (10th Cir. 1993); Sherrin v. Northwestern Nt. Life Ins. Co., 2 F.3d 373 (11th Cir. 1993); Southeast Nursing Home, Inc. v. St. Paul Fire and Marine Insurance Company, 750 F.2d 1531 (11th Cir. 1985). In St. Paul, the court found:

> A bad faith claim cannot lie unless "the insured lack[ed] a legitimate or arguable reason for failing to pay the claim" . . . Southeast's bad faith

> claim had not basis because the record conclusively established that St.
> Paul had properly exercised its contract right in insisting that Southeast's
> claim be arbitrated.  Thus, St. Paul clearly had a lawful reason for not
> acceding to Southeast's $275,000.00 claim.

Id. at 1536.

See, Bartlett v. John Hancock Mutual Life Insurance Co.. 538 A.2d 997, 1000 (R.I.

1988) (there can be no cause of action for an insurer's bad faith refusal to pay a claim

until the insured first establishes that the insurer breached its duty under the policy; to

establish a claim for bad faith, the plaintiff must show the absence of a reasonable

basis for denying benefits under the policy).

The Court has now found, as a matter of law, that no coverage exists under the

policy for claims asserted in the Liability Lawsuits.  Ruling at 21-22.  Accordingly,

Nationwide cannot have acted in bad faith.

IV.  Alternatively the Court Should as a Matter of Law Limit the Scope of Damages
     Claimed.

Alternatively, the Court should limit the scope of the damages claimed by

defendants in their counterclaims. To the extent Mortenson, Bland and Donaldson are

entitled to any fees, they should be limited to the period prior to the amendment of the

complaint in the Liability Lawsuit deleting the trademark claims and potential advertising

injury.

As to Warner, York, Birarelli, Marcucilli or Johnson no fees should be permitted as the Liability Lawsuits against these parties never alleged trademark infringement or any potential advertising injury. Ruling at 13. "When those [covered] claims are dropped, the contractual duty also expires, and the insurer is no longer obligated to provide a defense." Ruling at 12 citing Springdale Donuts, inc. v. Aetna Casualty & Surety Co., 724 A.2d 117, 1119-20 (Conn. 1999).

The damages claims should be limited to only those claims where the possibility of coverage existed. Since there was never a possibility of coverage in the Warner complaints no damages should be permitted. With respect to the Bland defendants, any damages should be limited to the period prior to the August 17, 2000 amendment. Ruling at 4.

PLAINTIFF,
NATIONWIDE MUTUAL INSURANCE COMPANY


By:   /s/ Michael Feldman, Esq.
      Michael Feldman, Esq.
      Feldman & Hickey, LL
      10 Waterside Drive, Ste. 303
      Farmington, CT 06032
      Its Attorney
      Fed. Bar #ct 06649
      (860) 677-0551
      (860) 677-1147 (fax)
      michaelfeldman@feldmanhickey.com

## CERTIFICATION OF SERVICE

I hereby certify that on April 4, 2007, a copy of the foregoing Plaintiff's Supplemental Motion for Summary Judgement was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Frank F. Coulom, Jr., Esq.
Maria T. Ackley, Esq.
Erin O'Brien, Esq.
Brien P. Horan, Esq.
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597

and via regular mail to:
Honorable William I. Garfinkel
United States District Court
915 Lafayette Street
Bridgeport, CT 06604

/s/Michael Feldman, Esq.
Michael Feldman, Esq.
Feldman & Hickey, LLC
10 Waterside Drive, Ste. 303
Farmington, CT 06032
Its Attorney
Fed. Bar #ct 06649
(860) 677-0551
(860) 677-1147 (fax)
michaelfeldman@feldmanhickey.com

-19-