**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NATIONWIDE MUTUAL INSURANCE | : | |
| COMPANY, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | 3:00CV1180(CFD) |
| | : | |
| | : | |
| vs. | : | |
| | : | |
| BRUCE MORTENSEN, ET AL., | : | |
| | : | |
| Defendants. | : | |
| | : | JULY 2, 2007 |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**NATIONWIDE MUTUAL INSURANCE COMPANY'S**
**SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

The Defendants hereby submit this Memorandum of Law in Opposition to Nationwide

Mutual Insurance Company's ("Nationwide") Supplemental Motion For Summary Judgment.

As discussed more fully below, the Defendants submit that summary judgment should be denied

for each of the following reasons:

1.      This Court previously held as a matter of law that Nationwide had a duty to

defend the allegations in the original complaints which, *inter alia*, alleged covered claims for

slogan infringement.  The attorney's fees due to defendants are still in dispute and a trial is

required.

2.      There is overwhelming evidence in the record that Nationwide had an express

plan to deter agent defections by destroying "defectors" financially.  Based on the evidence of

**ORAL ARGUMENT REQUESTED**
**TESTIMONY NOT REQUIRED**

record, a jury could easily infer that Nationwide amended out the covered claims in the liability complaints as part of the express plan to destroy the defectors financially.  That inference is evidenced in particular by the undisputed fact that the Bingham firm acted as both coverage counsel and counsel in the liability action in a situation involving a defecting agent in New York. Indeed the same Bingham lawyer in the coverage case in New York was instrumental in the amendment of the underlying complaints in this case.

3.     By interfering with the defense obligation, Nationwide breached it's duty of good faith and fair dealing not to undermine the reasonable expectations of the insured defendants, and it also breached its fiduciary duty to its insureds in the liability actions.  Nationwide decided to "bleed the agents dry" by allowing its lawyers in the coverage case and its lawyers in the liability lawsuits to collaborate to deprive the agents of a *bona fide* legal defense.

4.     Nationwide admitted the allegations in the counterclaim by failing to serve a timely Reply to the Defendants' counterclaim as is mandated by Fed. R. Civ. P. 7(a) and 8(d). These admissions establish that Nationwide a) amended its complaint against David Donaldson, Bruce Mortensen and Patricia Bland so as to deprive these insureds of a defense in the underlying Liability Lawsuits; b) failed to pay the defense costs that counsel for Donaldson, Bland and Mortensen incurred in defending the Liability Lawsuits despite its promise and obligation under the respective insurance policies to do so; and (c) did not assert some causes of action against James W. Warner, Robert York, John Marcucilli, James L. Birarelli and Bonnie Johnson in order to evade paying the defense costs that it was/is required to pay under the respective policies;

5.      Nationwide waived any claim that the Defendants are collaterally estopped from asserting that Nationwide engaged in bad faith by taking steps to evade its contractual obligation, and the collateral estoppel claim cannot pass muster under standards set forth for deciding a motion for summary judgment without depriving the Defendants of their constitutional right to a trial by jury.

6.      This Court previously held that Nationwide is a fiduciary of the Defendants, Nationwide should not be permitted to get a second bite at the apple especially where it never filed a timely motion to reconsider the issue; and

7.      The limitation on the amount of attorney's fees that Nationwide seeks for the breach of its duty to defend the allegations in the original complaints is premature as Nationwide is essentially seeking an improper "advisory opinion."

## II.    STATEMENT OF MATERIAL FACTS AND PROCEDURAL HISTORY[1]

### A.    NATIONWIDE'S PLAN TO DESTROY THE "DEFECTING" AGENTS FINANCIALLY BY ANY MEANS NECESSARY, INCLUDING DENYING THEM A LEGITIMATE DEFENSE UNDER THEIR INSURANCE POLICIES.

In 1998, Nationwide began experiencing a large exodus of independent contractor agents like the Defendants who were choosing to forego their Agency Security Compensation and to switch their customers to other carriers.  The departures began in New York and Pennsylvania and were beginning to spread to other states such as North Carolina, Maryland, Connecticut and Tennessee. (Deposition of Galen Barnes, 10/11/2001, pp. 36, 82)(Exhibit 1); (Deposition of Norris Joseph Young, 5/25/200, pp.6, 82-90,125-127)(Exhibit 2); (Deposition of Stephen T. Miles, 1/19/2000 and 1/20/2000, pp. 6-7, 102, 177-83, 191-193)(Exhibit 3); (Deposition of

---

[1]  In addition to the exhibits submitted with this Memorandum, the Defendants incorporate their prior Statement of Material Facts In Opposition To Plaintiff's Motion For Summary Judgment. (Docket No. 82).

Glenn A. Beckwith, 4/16/20001, pp 33, 149)(Exhibit 4)(Stipulated Exhibits 543A-G, 544, 545A-G).[2]

In a period of less than 24 months, approximately 90 agents had left, and Nationwide personnel in Columbus Ohio estimated a potential loss of premium of $90 million with more agents expected to leave and still more premium at risk.  Nationwide lost approximately 10 percent of its agency force in New York, and nearly 15 percent of its agency force in Connecticut.  (Miles Depo., 1/19/2000 and 1/20/2000, pp. 102, 177-83).

Nationwide's officers at the corporation's headquarters began "catastrophe" planning in the event of a mass agent departure on a single day.  Other than retaining forfeited Agency Security Compensation, Nationwide did little or nothing in response to the early departures.  (Miles Depo., 1/19/2000 and 1/20/2000, pp. 191-193).   By early 1999, Nationwide's management in Ohio was gravely concerned about "agency defections."  Special project teams were formed to implement a response to the problem, including the "Defense to Agency Acquisition" team and the "Reflex Action" team.   The teams were headed by officers of Nationwide.   (Barnes Depo. 89-93, 99, 130-140); (Young Depo. pp. 172-174).   Among the recommendations made were:

    (a)      to rewrite the Agent's Agreement;

    (b)      to "sue agents every chance we get";

    (c)      to slow down payments to defecting agents;

    (d)      to hire away the office manager of the defecting agent to cripple the agency; etc.

(Young Depo. pp. 147-155).  (See also Stipulated Exhibit 523).

---

[2]  Nationwide has stipulated as to the authenticity of all exhibits denoted "stipulated." See David Donaldson's Exhibit List with Nationwide's Stipulations which is Exhibit E to the Joint Trial Memorandum filed on February 20, 2007 in *Nationwide Mut. Ins. Co. v. Bland, et al*., Docket No. 3:99-CV-2005 (RNC)(Docket No. 309).  Nationwide's stipulations are attached hereto as Exhibit 5.  All of the stipulated exhibits by Nationwide are attached hereto as Exhibit 6.

At the same time, Galen Barnes, the President of Nationwide, and his key subordinates (a/k/a "the Nationwide Leadership Team" or "NILT") were meeting regularly to address the issue. Barnes received reports directly from his top aides on the grave subject of "Agency Defections." *Nationwide Mut. Ins. Co. v. Fleming*, 2007 PA 145 (Pa. Super. May 21, 2007) (attached hereto as Exhibit 7). Barnes was also reporting regularly to the Board of Directors of Nationwide on efforts being made to dissuade agency defections. In August 1999, Barnes instructed his principal subordinates to "brainstorm" to devise "creative ways to stem the tide of agent defections." (Barnes Depo. pp. 143-145). (See also Stipulated Exhibit 523).

Nationwide determined that it would "do whatever it takes" to protect premium dollars and that it would "bleed the agent dry" in doing so and "cut them off at the knees." (Miles Depo., 1/19/2000 and 1/20/2000, pp. 251-255). Nationwide's sole goal was to cut off the departing agent's contractual right to deal with customers; to stop solicitation under any circumstances. (Young Depo. pp. 125-127).

Nationwide clearly recognized the problem of defecting agents as a growing cancer considering that the courts were ruling that the agents upon forfeiture of their Agency Security Compensation could compete against Nationwide and could use policyholder information to do so. (A copy of Nationwide's oral argument in a related agent defection case, *Thyroff v. Nationwide Mutual Insurance Co.*, 460 F.2d. 400 (2d Cir. 2006), will be manually filed with the Court)(Exhibit 8). Nationwide decided to take decisive steps to "demonstrate to all [Nationwide] agents that defecting is not financially beneficial to them." (Stipulated Exhibit 514). One of these critical steps was to "liberally interpret any of the contractual language pertaining to monies owed [by Nationwide] to slow down financial payments to the defecting agents."

(Stipulated Exhibit 523).  Another critical step was to hire a force of dedicated lawyers to sue the defecting agents every chance it had.  (Stipulated Exhibit 523).

For Nationwide, it was a matter of survival by any means necessary.  Instead, of competing head to head in the free marketplace, Nationwide decided to take decisive steps to "demonstrate to all [Nationwide] agents that defecting [was not and would never be] financially beneficial to them."  (Stipulated Exhibit 514).

There was only one <u>major problem</u> with Nationwide's scorched earth policies that it had cunningly crafted; the agents that it was about to sue were insured by Nationwide for the claims that Nationwide wanted to assert against them.  To honor the claims that inevitably would be submitted to Nationwide would be tantamount to arming the agents with the "ammunition" (in the form of payment of a legal defense) to defend against the scorched earth policies in the war that it declared against the agents, its insureds.  Nationwide could not let that happen and would not arm its perceived "enemies."  Nationwide's solution to this dilemma called for the breach of its fiduciary obligations to the insurance agents that it insured.

Consistent with its scorched earth litigation strategy, Nationwide decided to use its in-house attorneys to perform basic claims functions normally reserved to claims adjusters. (Beckwith Depo., 4/16/2001, pp. 33, 149.)[3]  It did so in order to utilize the attorney-client/work product doctrine as shields because it never had any intentions to honor the legitimate claims that it knew would inevitably be submitted by the defecting agents for insurance coverage.  By invoking the attorney-client privilege and expecting its in-house-attorney-soldiers (and also paid employees) to invoke the work-product doctrine, it designed a scheme to prevent agents from discovering the steps taken to "disarm" them and to bleed them dry.  Essentially, Nationwide

---

[3] *Mission National Insurance Co. v. Lilly,* 112 F.R.D. 160, 164 (D. Minn. 1986)(insurance company cannot utilize attorneys to perform purely claims functions).

wanted to disarm the agents (its insureds who paid their premiums) quietly because it did not want its illegal and immoral litigation tactics to be exposed.

In furtherance of its plan to disarm and thereby bleed the agents dry (its insureds whom it owed fiduciary obligations to while handling their claims), Nationwide 1) amended its complaint against Donaldson, Mortensen and Patricia Bland so as to deprive these insureds of a defense in the underlying Liability Lawsuits[4]; 2) failed to pay the defense costs that counsel for Donaldson, Bland and Mortensen incurred in defending the Liability Lawsuits despite its promise and was obligation under the respective insurance policies to do so; and 3) Nationwide chose not to assert some causes of action against Warner, York, Marcucilli, Birarelli and Johnson in order to evade paying the defense costs that it was/is required to pay under the respective policies. Nationwide would not stop until it bled the agents dry.

**B. NATIONWIDE DECISION TO BLEED THE AGENTS DRY BY ALLOWING ITS LAWYERS IN THE COVERAGE CASE AND ITS LAWYERS IN THE UNDERLYING TO COLLABORATE TO DEPRIVE THE AGENTS OF THEIR CONTRACTUAL RIGHT TO A DEFENSE.**

Nationwide retained its army of lawyers to stop the departing agents from receiving the benefits of their contracts. Nationwide did not screen the lawyers that it retained to sue the insureds from its lawyers that it retained to provide it with a coverage opinion. More particularly, Attorney Jamie Fried of Bingham McCutchem, LLP ("Bingham") worked both as coverage counsel and counsel for the underlying liability lawsuit in *Lawrence Piper v. Nationwide Mut. Ins. Co., et al.* Index No. 792201/99 and *Nationwide Mut. Ins. Co. v. Lawrence M. Piper, et al.*, Index No. 78328 (*See* Affidavit of Stuart R. Shapiro)(attached hereto as Exhibit 9). In *Nationwide Mut. Ins. Co. v. Piper,* Nationwide sued Piper who was a former agent of Nationwide, like the Defendants here, in New York Supreme Court for damages and sought in a

---

[4]This point should not be construed as a concession by the Defendants that there is no coverage under the present operative complaints in the underlying liability lawsuits.

separate lawsuit to enjoin Piper from using policyholder information.  Nationwide also insured Piper.

Attorney Fried of Bingham represented Nationwide in both the liability lawsuit brought by Nationwide against Piper and the coverage action where Piper sought insurance coverage from Nationwide for the defense of the liability lawsuit.  Attorney Fried is the same lawyer from Bingham who amended the complaints in the underlying Liability Lawsuits to remove the covered claims in this case.  (*See* Exhibit 10 : Jamie Fried letter to Frank Coulom).[5]  Now, Nationwide incredibly asks this Court to determine conclusively as a matter of law that Nationwide's decision to remove the covered claims from the lawsuit brought against the Defendants in the present coverage case was not at all motivated by its express corporate objective of stopping defections by destroying defecting agents financially.  The ultimate determination, however, is a question of fact for the jury to decide.  Fried's conduct on both the insurance coverage side and in the underlying litigation against at least one defector is powerful circumstantial evidence that would allow a jury to disbelieve all of Nationwide's self serving statements.

Nationwide vehemently defends its position while ignoring that, like Piper, the attorneys at Bingham were sharing critical information with Nationwide's coverage attorney. More precisely, shortly after the hearing concerning Fried's request for leave to amend the complaint, Bingham forwarded a copy of the hearing transcript to coverage counsel.  Just days after the leave to amend was granted in the liability lawsuits, Nationwide's coverage counsel moved for summary judgment seeking denial of coverage based upon the amended complaint.  Simply

---

[5] The Defendants should have been entitled to test Nationwide's assertion and should also be permitted to depose Attorney Fried.  The magistrate judge instead prejudged the merits of the Nationwide's "strong" motion for summary judgment and denied discovery.

because Nationwide claims that these events are unconnected does not make it so. The Defendants are entitled to have the finder of fact determine the question.

## III.    LEGAL STANDARD

Fed. R. Civ. P. 56(c) provides, in part, that summary judgment shall be rendered only when a review of the entire record demonstrates "that there is no genuine issue as to any material fact." The burden falls on the moving party to establish that no relevant facts are in dispute. *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1319-20 (2d Cir. 1975). Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *United States  v. Diebold, Inc.*, 369 U.S. 654, 655 [8 L. Ed. 2d 176, 82 S. Ct. 993] (1962) (per curiam); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Therefore, not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them. *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 313 (2d Cir. 1981), *accord Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 [91 L. Ed. 2d 202, 106 S. Ct. 2505] (1986).

The fundamental maxim remains that on a motion for summary judgment a court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Heyman*, 524 F.2d at 1319-20. As long as the non-moving party has adduced sufficient facts to substantiate the elements of his claim, summary judgment is inappropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317 [91 L. Ed. 2d 265, 106 S. Ct. 2548] (1986).

## IV.     ARGUMENT

### A.     THE PROCEDURAL REASONS REQUIRING DENIAL OF NATIONWIDE'S MOTION

Before addressing the merit (or lack of merit) to Nationwide's motion, it is important to address the several procedural defects that bar Nationwide from obtaining summary judgment

### 1.     Nationwide Admitted The Allegations In The Counterclaim By Failing To Serve A Reply To The Defendants' Counterclaim As Is Mandated By Fed. R. Civ. P. 7(a) And 8(d).

Fed. R. Civ. P. 7(a) mandates that a Reply must be filed in response to a counterclaim "denominated as such."  Since the counterclaim serves as the defendant's complaint, the courts mandate that a Reply which is the equivalent of an Answer must be filed.[6]  Fed. R. Civ. P. 8(d) provides that the failure to timely respond to a counterclaim is fatal to a party's claim as the allegations of such counterclaim are deemed admitted.  More particularly, Fed. R. Civ. P. 8(d) provides in pertinent part that:

> [a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading. . . .

See Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1202 (2nd Cir. 1970)("Here 'the pleading' was the reply, which was required, F.R. Civ. P. 7(a), to be filed within 20 days after October 8. . . "); Last Chance Mining Co. v. Tyler Mining Co., 157 U.S. 683  (1895)("[a] failure to answer is taken as an admission of the truth of the facts stated in the complaint, and the court may properly base its determination on such admission."); George Steinberg & Son, Inc. v. Butz, 491 F.2d 988  (2nd Cir. 1974)( "[t]he corporation failed to respond, although the complaint notified it that failure to answer would constitute admission of the facts alleged and that failure to

---

[6]  "Although Rule 7(a) maintains the traditional distinction in terminology between a 'reply' to a counterclaim and an 'answer' to a complaint, cross-claim, or third-party complaint, the difference in nomenclature is of little importance, because procedurally and functionally an answer and a reply to a counterclaim effectively serve the same purpose."  WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1184, p. 24.

request a hearing would constitute waiver of the hearing."); *The Hattie Thomas*, 262 F. 943, 945 (2nd Cir. 1920) ("the answer admits, by failure to deny, that the appellee has a maritime lien"); *KBI Sec. Serv. v. NLRB*, 91 F.3d 291, 295 (2nd Cir. 1996) (the failure to file an answer in a timely manner constitutes admission of the allegations of the complaint); *National Union Fire Ins. Co. v. Fannin*, 257 F. Supp. 1017 (S.D. Oh. 1966)(insured deemed to have admitted that insurer had no duty to defend and indemnify him by failing to file a responsive pleading within the time prescribed by law.)

In the instant case, the Defendants asserted their counterclaim in their "Answer, Affirmative Defenses and Counterclaim," dated August 14, 2000 ("Counterclaim")(Docket No. 12).[7] Fed. R. Civ. P. 12 (a)(2) provides that: "[t]he plaintiff **shall** serve a reply to a counterclaim in the answer within 20 days after service of the answer, or, if a reply is ordered by the court, within 20 days after service of the order, unless the order otherwise directs." (emphasis added). Almost seven years later, no such Reply has been filed.

Now, Nationwide claims that it is entitled to summary judgment by seeking to rebut the very facts that it has legally admitted by failing to timely file a Reply. These facts which are now admitted, among others, include:

> 15.    Nationwide Mutual Insurance Company ("Nationwide") issued to each of the individual defendants a Business Provider Insurance Policy ("Policy") containing business provider liability coverage.
>
> 16.    In or after February, 2000, and prior to commencing this action, Nationwide sent written demand letters to defendants Warner, Birarelli and Johnson in which Nationwide threatened to sue these counterclaimants based on the same claims alleged in the Bland, Donaldson and Mortensen lawsuits (hereinafter collectively referred to as the "Bland cases"), which claims included the

---

[7]  The affirmative defenses, the answers and the counterclaim were set forth in separate sections and labeled accordingly.  As such, the counterclaim cannot be said to not have been "denominated as such" as is mandated by Fed. R. Civ. P. 7(a).  In fact, Nationwide recognizes the existence of the counterclaim and moves for summary judgment with respect to "the defendants' counterclaims."(P. Br. at 2)

trademark allegations covered by the insurance policies (the "policies") issued to the defendants by Nationwide.

17. On information and belief, following the issuance of those demand letters, Nationwide reviewed internally and received an opinion from legal counsel addressing whether the trademark allegations in the <u>Bland</u> cases were covered under the advertising injury coverage available under the policies.

18. In May and June, 2000, Nationwide issued reservation of rights letters to the counterclaimants promising that Nationwide would "furnish a defense by funding Robinson & Cole defense costs."

19. Under the Policies, Nationwide assumed fiduciary obligations to each of the counterclaimants.

20. Nationwide breached its fiduciary obligations to the counterclaimants by choosing which claims to assert against counterclaimants to evade Nationwide's obligations to provide insurance coverage.

21. Nationwide has breached its fiduciary obligations to counterclaimants Bland, Mortensen and Donaldson by seeking to withdraw covered claims in the Bland cases so that Nationwide could evade its defense obligations as promised under both the policies and the reservation of rights letters.

22. Over the last several months, Nationwide has been billed for defense costs but has failed despite demand to pay defense costs as promised.

23. The foregoing conduct of Nationwide constitutes a breach of its fiduciary obligations, its duty of good faith and fair dealing and the promises set forth in its reservation of rights letters.

24. As a result of the aforesaid conduct of Nationwide, the counterclaimants have suffered and continue to suffer damages.

(Counterclaim, ¶¶ 15-24).

Given the foregoing admissions, Nationwide's claim that it did not breach its fiduciary duty or the duty of good faith and fair dealing implied in the contracts between it and the Defendants is without merit. These admitted facts make plain that Nationwide 1) amended its

-12-

complaint against David Donaldson, Bruce Mortensen and Patricia Bland so as to deprive these insureds of a defense in the underlying Liability Lawsuits; 2) failed to pay the defense costs that counsel for Donaldson, Bland and Mortensen incurred in defending the Liability Lawsuits despite its promise and obligation under the respective insurance policies to do so; and 3) that it did not assert some causes of action against Warner, York, Marcucilli, Birarelli and Johnson in order to evade paying the defense costs that it was/is required to pay under the respective policies. As such, Nationwide's summary judgment should be denied in its entirety because an "insurer who chooses not to provide its insured with a defense and who is subsequently found to have breached its duty to do so must bear the consequences of its decision, including the payment of any reasonable settlement agreed to by the plaintiff and the insured." *Black v. Goodwin, Loomis & Britton, Inc*., 239 Conn. 144, 168 (1996); *Missionaries of the Company of Mary, Inc. v. Aetna Casualty & Surety Co*., 155 Conn. 104, 113 (1967). Significantly, "after breaking the contract by its unqualified refusal to defend, [Nationwide is] not thereafter . . . permitted to seek the protection of that contract in avoidance of its indemnity provisions. Nor [is Nationwide] permitted, by its breach of the contract, to cast upon the [Defendants] the difficult burden of proving a causal relation between [Nationwide's] breach of the duty to defend and the results which are claimed to have flowed from it." *Missionaries of the Company of Mary, Inc.,* 155 Conn. at 114.

     2.     *The Plaintiff's Disguised And Untimely Motion For Reconsideration Should Be Denied; Summary Judgment Should Be Denied Because This Court Has Already Held That Nationwide Is A Fiduciary Of The Defendants***.**

There is a second procedural reason requiring denial of Nationwide's motion. Despite its caption, the motion is nothing more than a motion for reconsideration. The factual record

created by Nationwide is unchanged.  No new factual material has been introduced and a supporting statement of undisputed facts has not been submitted.  It is the same motion submitted years ago.  As a motion for reconsideration, it does not meet the standards for consideration, and it is untimely.

In no uncertain terms, this Court previously held that Nationwide is a fiduciary of the Defendants.  More precisely, this Court found that "genuine issues of material fact exist as to whether Nationwide breached **its fiduciary duty** and duty of good faith and fair dealing by allegedly choosing which claims to assert against each defendant in an attempt to avoid its contractual duties of coverage and by amending its Liability Lawsuit complaints to drop certain covered claims.  . . Thus, the Court declines to enter summary judgment on the defendants' damages claims for breach of Nationwide's fiduciary duty, or duty of good faith and fair dealing."  *Nationwide Mutual Ins. Co.*, 222 F. Supp. 2d at 182. (citation omitted; emphasis added).  Now, Nationwide wants this Court to reconsider its position under the guise of a Supplemental Motion For Summary Judgment.  *Palmer v. Sena*, 474 F. Supp. 2d 353, 2007 U.S. Dist. LEXIS 15587 (D. Conn. 2007)(motion to reconsider is the proper vehicle to challenge a court ruling that overlooked facts or law).

In its September 24, 2002 ruling, this Court made clear that what remained to be decided is whether there are disputed issues of material fact that would "lead a jury" to conclude that Nationwide breached its fiduciary duty that it owed to the Defendants by "choosing which claims to assert against each defendant in an attempt to avoid its contractual duties of coverage and by amending its Liability Lawsuit complaints to drop certain covered claims."  *Id*.  More precisely, the Court held that "this ruling is without prejudice to Nationwide moving for summary judgment at a later date as to the defendants' damages claims for breach of ***Nationwide's***

***fiduciary duty***, or duty of good faith and fair dealing." *Id*. n. 18 (Emphasis added). Clearly, there is no question that the Court ruled that Nationwide owed the Defendants a fiduciary duty.

If Nationwide disagreed with the Court's ruling that it owed the Defendants a fiduciary duty as a matter of law, it was required to file a motion to reconsider the Court's decision. It has never done so in almost five years because it would be unable to meet the strict legal standards for deciding a motion for reconsideration.

> The standard for granting a motion for reconsideration is strict. *See Shrader v. CSX Transp., Inc*., 70 F.3d 255, 257 (2d Cir. 1995). Such a motion will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court. . . A motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.

(Internal quotation marks omitted.) *Palmer*, 2007 U.S. Dist. LEXIS 15587, *3. Here, Nationwide seeks to relitigate an issue that has already been decided by the Court and has not offered any new evidence or controlling law that that this Court overlooked and as such, its motion to reconsider under the guise of a supplemental motion for summary judgment should be denied. In fact, Nationwide relies only on exhibits previously filed as part of its original Motion for Summary Judgment. (P. Br. at 4 n. 2) It has offered no new evidence by way of sworn affidavit or otherwise. The Defendants, on the other hand, have added strong additional evidence to support the role of Bingham in the <u>Piper</u> coverage action.

Moreover, this Court should not consider Nationwide's disguised motion to reconsider as it is untimely. Nationwide needed to file such motion within ten days of this Court's ruling dated September 24, 2002. *Id*. at *4 n. 2. *See also* D. Conn. L. Civ. R. 7(c)(1). Nearly five years later, it still has not so. As such, Nationwide cannot be permitted to circumvent the stringent requirements of D. Conn. L. Civ. R. 7(c)(1) by having this Court reconsider its position when its

motion is almost five years too late. *Channer v. Brooks*, No. 3:99 CV 2564, 2001 U.S. Dist. LEXIS 15307 (D. Conn. Sept. 10, 2001)(Droney, J.)("[t]he petitioner's second motion for reconsideration was filed on February 23, 2001, thirty-one days after the filing date of the Court's ruling, and his third motion for reconsideration was filed on March 19, 2001, fifty-five days after the Court's ruling" were deemed untimely.)

Even if this Court were to reconsider its prior decision, summary judgment should nevertheless be denied. In *Hutchinson v. Farm Family Cas. Ins. Co*., 273 Conn. 33 (2005), the Connecticut Supreme Court recognized that there is a fiduciary relationship between an insured and its insurer and that "[w]hen a liability insurer undertakes to defend its insured, it 'has a continuing duty to use the degree of care and diligence a person would exercise in the management of his or her own business . . . .'" *Id.* at 47. This is consistent with what has long been recognized in this State. *See e.g. Town of Montville v. Fidelity & Guar. Ins. Underwriters*, 1997 Conn. Super. LEXIS 2613 (Conn. Super. Ct. Sept. 24, 1997)(all unreported cases are being submitted as part of a separate appendix). In *Town of Montville,* the court recognized that in the context of an insurer's obligations to defend the insured, the insurer's relationship with the insured is a fiduciary one. Additionally, an insurer that takes evasive steps to avoid its fiduciary obligations to defend the insured does so at its peril. Notably, the court remarked that:

> This court observes that the insurer's relationship to the insured is fiduciary in nature and, as such, is guided, in the words of then Judge Cardozo, by 'something stricter than the morals of the marketplace.' . . . . The defendant's refusal to defend the insured as a result of an inarticulately-worded complaint seems, at best, disingenuous, and certainly far below the standard established for fiduciary relationships.

*Id.* at *15 n. 14 (Citation omitted). *Sheltry v. Unum Life Ins. Co. of Am*., 247 F. Supp. 2d 169, 179 (D. Conn. 2003)(recognizing a fiduciary duty may exist in the liability context as opposed to

the first party context.)[8]; *Farricielli v. Nationwide Mut. Fire Ins. Co*., NO. 328028, 1996 Conn. Super. LEXIS 2087 (Conn. Super. Ct. July 30, 1996)( "[a]t the time the insured makes his claim and while it is being processed the insurer stands in a fiduciary relationship to the insured.  When a dispute later breaks out between the two, it is difficult to understand how information contained in the insurer's file concerning the claim would not be relevant.").  *See also Manzanita Park v. Insurance Co. of North America*, 857 F.2d 549, 555 (9th Cir. 1988)(insurer who undertakes to defend is held to the same standard of fiduciary care as the attorney defending the insured).[9]

Questions of fact exist a to whether Nationwide breached its fiduciary obligations and whether it violated its covenant of good faith and fair dealing by eliminating the slogan infringement claim claims against the Defendants.  Compare *Nationwide Mutual Ins. Co. v. Allianz Aktiengesellschaft, et al.,* Docket No. 2:02-CV-00323-(JLG) (D. Oh. 2002)(copy of the Allianz Complaint is attached as Exhibit 12).  In *Allianz*, Nationwide alleged that for the time period between 1997 and April, 2002, it invested more than $150,000,000 dollars in advertising

---

[8]  *Uberti v. Lincoln Nat'l Life Ins. Co*., 144 F. Supp. 2d 90, (D. Conn. 2001)(" [i]n fact, some lower courts in Connecticut have described the relationship between insurer and insured during the period that a claim is being processed as a fiduciary one. *See, e.g*., *Farricielli v. Nationwide Mutual Fire Ins. Co*., 1996 Conn. Super. LEXIS 2087, 17 Conn. L. Rptr. 368 (Conn. Super. 1996). Other courts, such as that here, have limited the situations in which fiduciary-like duties may be imposed on an insurer, particularly to those involving third-party claims. *See, e.g*., *Grazynski v. Hartford Ins. Co*., 1997 Conn. Super. LEXIS 1876, No. CV960337594, 1997 WL 407897 (Conn. Super. July 11, 1997).")

[9]  Nationwide's reliance on *Harlach v. Metropolitan Property & Liability Ins. Co*., 221 Conn. 185 (1992) and *United States v. Brennan*, 183 F.3d 139 (2d Cir.1999) is misplaced.  In *Harlach* the issue before the court was whether the insurer had a fiduciary obligation to ensure that the insured had obtained adequate insurance to cover him or her in the event of an accident.  The court held that that an insurer has no fiduciary duty to the insured to explain uninsured motorist coverage or the advantages or disadvantages of procuring certain uninsured motorist limits.  Obviously, in the process of purchasing insurance the insured has the option of being represented by an independent insurance agent and could learn from such an individual the advantages and disadvantages of accepting or rejecting a particular coverage.  Under such circumstances, the Supreme Court in *Harlach* held the insurer is not obligated to explain to the insured what type of coverage is best for him or her.  *Id.* at 190.

Unlike the situation in *Harlach*, the insureds here are at the mercy of the insurance company when they are being defended under a reservation of rights as the insurer under the policy can control the direction of the litigation, settlement and as here can wrongfully withhold payment of the defense.  Recognizing the possibly for abuse by the insurer the court in *Town of Montville* cautioned against "disingenuous"  tactics by insurers to defeat coverage. *Town of Montville*, 1997 Conn. Super. LEXIS 2613, * 15.

*United States v. Brennan*, 183 F.3d 139 (2d Cir.1999) is equally distinguishable as that case involves the interpretation of New York law.  Since there is clear appellate precedent in Connecticut, this case has no persuasive authority.

and other activities to promote its ON YOUR SIDE slogan.    Allianz Complaint, ¶ 20.
Nationwide must explain to the jury why it decided to pursue the slogan claims against other
parties at the same time that the Liability Lawsuits were pending, yet chose to eliminate those
same slogan claims against the Defendants in this action.   While disbelief is not evidence, there
is however ample circumstantial evidence to permit this issue to be decided by the jury.
*Goldhirsh Group, Inc.*, 107 F.3d at 105-108.

### 3.    Nationwide Waived Its Collateral Estoppel Claim By Failing To Plead It Accordance With Fed  Civ. P. 8(c).

Even if Magistrate Judge Martinez made a finding of "undisputed fact" in the underlying
lawsuits that Nationwide acted properly in amending its complaint,[10] that "finding" is not the
basis for collateral estoppel in this action.   More precisely, collateral estoppel is an affirmative
defense which is waived if not pled.   *Curry v. City of Syracuse*, 316 F.3d 324, 330-31 (2d Cir.
2003).

More particularly, the counterclaimants filed their counterclaim on August 14, 2000
alleging that "Nationwide has breached its fiduciary obligations to counterclaimants Bland,
Mortensen and Donaldson by seeking to withdraw covered claims in the Bland cases so that
Nationwide could evade its defense obligations as promised under both the policies and the
reservation of rights letters." Counterclaim, ¶ 19.   A reply to such counterclaim was due no later
than September 4, 2000.   In such Reply, Nationwide would be required to assert the special
defense of collateral estoppel that it is now asserting.   Notably, "[i]f the original answer contains
a counterclaim, however, the plaintiff is obliged to reply to it and that pleading which, in effect,

---

[10] We submit that Magistrate Judge Martinez did not make such a "finding" and that she could not have made such a
finding since there was no admissible evidence before her.   She merely accepted the argument of counsel for
purposes of ruling on a motion to amend.   She also could not make findings of fact since the defendants did not
agree that the magistrate could decide substantive issues in the case.

is an answer to that counterclaim, must contain any affirmative defenses the plaintiff may wish to assert against the counterclaim." WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1278, p. 690.  To date, no such Reply has ever been filed.

Nationwide could have timely asserted the collateral estoppel defense as it alleges that Judge Martinez made the comment for the first time on August 17, 2000.  (P. Br. at 12, Exhibit J).  This is more than two weeks before the Reply to the Counterclaim was due.  Even assuming that the comment by Magistrate Judge Martinez was made subsequent to the date that Nationwide was obliged to file its Reply, Nationwide had almost seven years to assert this defense but never has. Fed. R. Civ. P. 15.  Nationwide simply made a passing reference to Judge Martinez's comments in its Memorandum of Law in support of its Motion For Summary Judgment dated April 26, 2001.  (Docket No. 63)(P. Br. at 26-27).  The issue of collateral estoppel is raised and briefed almost seven years after the defense was available to Nationwide.  Under the circumstances, the counterclaimants never had notice of the plea of estoppel and a chance to argue why the imposition of an estoppel would be inappropriate.

Moreover, "Nationwide acknowledges that his argument was made in its original summary judgment (See Nationwide's April 26, 2001 Memorandum at pp. 26-27)." (P. Br. at 13).  After considering the parties' submissions with respect to the April 26, 2001 Motion For Summary Judgment, including the comment made by Judge Martinez, this Court found that "genuine issues of material fact exist as to whether Nationwide breached its fiduciary duty and duty of good faith and fair dealing by allegedly choosing which claims to assert against each defendant in an attempt to avoid its contractual duties of coverage and by amending its Liability Lawsuit complaints to drop certain covered claims." *Nationwide Mutual Ins. Co. v. Mortensen, et*

*al.*, 222 F. Supp. 2d 173, 189 (D. Conn. 2002).  Nationwide is selectively relying on the comments made by Judge Martinez while disregarding the ruling made in this case.

This Court obviously recognized that the comment was not admissible evidence and rejected the foolish argument that it was a binding factual finding in this case.  Specifically, this Court found that there was an issue of material fact as to whether Nationwide breached "its fiduciary duty and duty of good faith and fair dealing by allegedly choosing which claims to assert against each defendant in an attempt to avoid its contractual duties of coverage and by amending its Liability Lawsuit complaints to drop certain covered claims."  *Nationwide Mutual Ins. Co.*, 222 F. Supp. 2d at 189.  When an issue of material fact exists, that issue must be submitted to the jury as the trier of fact for determination.  *Shore*, 565 F.2d at 819 (the Seventh Amendment preserves the right to a jury trial with respect to issues of fact).  The trier of fact ultimately must decide whether or not Nationwide acted in good faith.

    **B.**    **THE MERITS:  MATERIAL FACTS ARE IN DISPUTE AND NATIONWIDE IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

        **1.**    **NATIONWIDE'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT ALSO SHOULD BE DENIED BECAUSE NATIONWIDE COVERAGE PERSONNEL COLLABORATED WITH PERSONNEL INVOLVED IN THE LIABILITY LAWSUITS TO DENY THE DEFENDANTS' LEGITIMATE CLAIMS FOR INSURANCE COVERAGE.**

Nationwide's motion should also be denied for an even more fundamental reason.  This Court previously denied Nationwide's motion for summary judgment on the counterclaims.  Without *any* additional facts of record, Nationwide essentially asks the Court to reconsider its earlier ruling.  There is no legitimate basis for doing so.  Triable issues still exist as to the amount of attorneys fees due to the defendants under the duty to defend the slogan infringement claims in the original complaint.  And, based on the original record, and on the supplemental record

created by defendants on this motion, there is overwhelming evidence to support the Court's original ruling.

The Seventh Amendment preserves the right to a jury trial with respect to issues of fact. *Shore v. Parklane Hosiery Co.*, 565 F.2d 815, 819 (2d Cir. 1977). In the present case, there is powerful circumstantial evidence in the record to permit a jury to readily infer that Nationwide personnel employed in the underling liability suits against the agents collaborated with the Nationwide personnel involved in the insurance coverage defense.

Clearly, the same in-house lawyers who participated in the drafting, review and strategy concerning any aspects of the underlying lawsuits could not in any way participate in the insurance claims submitted by the Defendants. *See, e.g.*, *Goldenberg v. Corporate Air, Inc.*, 189 Conn. 504 (1983), *rev'd on other grounds Burger and Burger, Inc. v. Murren*, 202 Conn. 660 (1987)(in-house counsel at insurance company owes allegiance to insured and not to the insurance company that pays him/her a salary); *Continental Casualty Co. v. Pullman, Comley, Bradley & Reeves*, 929 F.2d 103, 108 (2d Cir. 1991)(same). In this case, Nationwide allowed its in-house lawyers to usurp basic claims functions and there is circumstantial evidence that these same in-house lawyers advised Nationwide regarding the liability claims against these agents.[11]

Moreover, the jury may also infer that Nationwide personnel involved on the coverage side communicated with Nationwide personnel involved in the underlying lawsuits in violation of its fiduciary obligations to its insureds. The jury's inference may be based on the fact that Nationwide previously permitted Bingham to serve both as coverage counsel and counsel for a

---

[11] Nationwide has categorically refused to allow the Defendants to uncover which of its attorneys participated in drafting, reviewing, and/or commenting on the pleadings in the underlying lawsuits, the jury may infer that some of these lawyers violated their fiduciary obligations to the Defendants in this case to assist their employer: Nationwide. (Attached as Exhibit 11 is Plaintiff's Responses and Objections to Defendants' First Set of Interrogatories dated September 27, 2000).

lawsuit brought against another agent who defected in New York . (Exh. 9) The same lawyer from Bingham, Jamie Fried, who entered the appearance in the New York case is the same lawyer representing Nationwide in this case.

Bingham asserts in this action that its actions are completely severable from the coverage issues and that it is not insurance coverage counsel to Nationwide. Yet Jamie Dockrey Fried, the Bingham lawyer who authored the letter announcing that the covered slogan infringement claims would be dropped (Exhibit 10), "coincidentally" appeared in New York state court to defend an insurance coverage action by Larry Piper, a "defecting" Nationwide agent in New York. Bingham also represented Nationwide in the underlying liability action brought by Nationwide against Piper. (Exhibit 11, Shapiro Affidavit). The evidence at trial will also show that Bingham negotiated the attorneys fees paid to Piper in settling the insurance coverage action in which Attorney Fried appeared. The finder of fact has the right to hear this testimony given the corporate objective of destroying all defectors. The jury could easily decide, based on this evidence alone, to reject all of Nationwide's self serving statements. Someone at Nationwide involved on the coverage side in *Piper* had to instruct Bingham to appear in the coverage case. It is hardly far-fetched to infer that someone involved in the coverage side case of this case instructed Bingham (either directly or indirectly) to amend out the covered claims.

Moreover there is additional evidence of record that Bingham was cooperating with coverage counsel in this case. Bingham has been shown to have forwarded a transcript of a hearing concerning Nationwide's request to amend the complaint so as to delete what it believed to be all of the claims that were covered under the insurance policies issued to the defecting agents. (See Exhibit 11, Plaintiff's Responses and Objections to Defendants' First Set of Interrogatories dated September 27, 2000). Nationwide's coverage counsel and Bingham were

acting together.  This is consistent with Nationwide's express corporate plan to bleed the agents

dry.  A jury can and should be permitted to draw whatever inferences from the above facts that it

deems proper.  While disbelief is not evidence, there is ample circumstantial evidence to permit

this issue to be decided by the jury.  *Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105-108 (2d Cir

1997); *Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1952).  Summary judgment, therefore,

should be denied.

> **2.    IT IS PREMATURE TO DECIDE NATIONWIDE'S ARGUMENT THAT THE SCOPE OF ATTORNEY'S FEES SHOULD BE LIMITED.**

Nationwide is improperly seeking an advisory opinion as to what its financial obligations

might likely be in the future in terms the amount of attorneys' fees that it would be required to

pay in the event that the jury ultimately finds that it breached its duty to defend the original the

Liability Lawsuits.  *See e.g. Cooke v. General Dynamics Corp*., No. 3:95-CV- 31, 1998 U.S.

Dist. LEXIS 15981, *2 (D. Conn. Sept. 8, 1998)(it was improper for the defendant to move for

partial summary judgment  pursuant to Fed. R. Civ. P. 56 "as to the correct methodology for

calculating damages in the event that defendant is found liable for violations of the Fair Labor

Standards Act, 29 U.S.C. § 201 *et seq*.  Because the court finds that this issue is not ripe for

decision, the instant motion should be denied without prejudice to renew when, and if,

defendant's liability is established.")  Nationwide's request is not ripe for determination because

it is seeking to learn "what the court would do if certain events were to eventually come to pass."

*Id*. at *2.  Similarly, the issue of whether Defendants Warner, Birarelli, Marcucilli and Johnson

are entitled to recover attorneys' fees is also not ripe.  Presumably, the latter Defendants would

be entitled to attorneys' fees if the jury finds that Nationwide's decision to not assert certain

covered claims in the Liability Lawsuits was motivated by bad faith.  To ask this Court to make

this determination even before the jury decides this issue is tantamount to seeking an "advisory opinion." As such, summary judgment on this ground should be denied.

## V.    CONCLUSION

For each of the foregoing reasons, the Defendants respectfully submit that Nationwide's Supplemental Motion for Summary Judgment should be denied.

DEFENDANTS,


By __/s/_____
       Frank F. Coulom, Jr. (ct05230)
       fcoulom@rc.com
       Jude Francois (ct25620)
       jfrancois@rc.com
       Robinson & Cole LLP
       280 Trumbull Street
       Hartford, CT  06103-3597
       Tel:  860-275-8200
       Fax:  860-275-8299

## **CERTIFICATION**

This is to certify that on this 2nd day of July, 2007, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


        /s/                                    
Frank F. Coulom, Jr.