NORRIS JOSEPH YOUNG, JR. - May 25, 2000

PAGE 173    SHEET 44

173

1  Q    And did you read it?
2  A    The actual document, yes.
3  Q    And did you make any copies of it?
4         MS. FREEMAN: The tool box, or the
5         cover page?
6  BY MR. COULOM:
7  Q    The tool box.
8  A    Yes.
9  Q    And who did you distribute copies to?
10 A    I believe I gave it to my sales managers, the
11       people listed earlier. And I believe Bernie
12       Madison has a copy.
13 Q    And why did you give it to them?
14 A    Because that was the process that we were to
15       follow in the event that we had more of these --
16       I want to take a break when we have an
17       opportunity because I think there is some
18       confusion on the record and I want to clarify it
19       before it goes much further.
20 Q    And did you see within that group of documents
21       the plan that had been implemented in
22       Pennsylvania and New York?
23 A    I'm not sure. From what I understand, that
24       reflex response tool kit was a combination of
25       those activities. I don't recall seeing

PAGE 174

174

1        specific this or specific that.
2  Q    When you say the reflex response tool box was it
3        an amalgam of different types of documents?
4  A    There were several documents in it.
5  Q    Do you recall the overview of the tool box?
6  A    I don't recall it.
7  Q    Okay. And do you recall seeing a -- withdrawn.
8        Have you ever put together a letter agreement
9        between existing Nationwide agents and yourself
10       involving the assigned book of business?
11 A    Yes.
12 Q    Is that letter contained in the reflex response
13       tool box?
14 A    I don't know. I don't believe that it is.
15 Q    And does that letter, or agreement, contain a
16       trades secret clause?
17       MS. FREEMAN: Objection as to form.
18       THE WITNESS: The letter that we
19       produced here, the document we produced
20       here for use here, I believe, has some
21       provisions in there.
22 BY MR. COULOM:
23 Q    When did you first start using that letter?
24 A    I really don't know. It was probably with the
25       initial group of agents that left. I don't

PAGE 175

175

1        know. I can find out.
2  Q    Was it used before agents began leaving?
3  A    No.
4  Q    Where did you come up with the text for that
5        letter?
6  A    The majority of the text came from a document
7        that I saw that was being used somewhere else.
8        And I incorporated in it some provisions that I
9        thought would be appropriate.
10 Q    When you say being used somewhere else, being
11       used where?
12 A    It was either -- I don't know where.
13 Q    Was it being used outside Connecticut?
14 A    Yes.
15 Q    Was it being used outside New England?
16 A    Yes.
17 Q    Was it being used by sales officers in other
18       states?
19 A    I believe it was.
20 Q    Have you had any agents leaving in Maine going
21       into competition against Nationwide?
22 A    Yes.
23 Q    Who?
24 A    A gentleman by the name of Doug Mitchell.
25 Q    And when did Mr. Mitchell leave?

PAGE 176

176

1  A    I don't know. I believe it was last year.
2  Q    Did you make any recommendations about Mr.
3        Mitchell?
4  A    In what regard?
5  Q    As to whether or not action should be taken
6        against him?
7  A    Yes.
8  Q    And what was your recommendation?
9  A    That we pursue litigation.
10 Q    And who did you make that recommendation to?
11 A    David Meyer, our general counsel in home office.
12 Q    And did Mr. Meyer accept or reject your
13       recommendation?
14 A    He accepted it.
15 Q    And after he accepted your recommendation, what
16       did you do, or what did he do?
17       MS. FREEMAN: Objection as to form.
18       Calls for speculation. Go ahead.
19       THE WITNESS: What I did was say,
20       "That's what I would like to do. Your job
21       is to make it happen." I don't know what
22       he did. I don't know what is involved with
23       what he is responsible for doing.
24 BY MR. COULOM:
25 Q    When you say you don't know what he did, what do

NORRIS JOSEPH YOUNG, JR. - May 25, 2000

## PAGE 233 SHEET 59

233

1  CERTIFICATE OF REPORTER
2    I, Sarah Najemy, a Notary Public duly
3  commissioned and qualified in and for the State of
4  Connecticut, do hereby certify that pursuant to
5  Notice, there came before me, on the 25th day of
6  May, 2000, the following named person, to wit:
7  NORRIS JOSEPH YOUNG, JR., who was by me duly sworn to
8  testify to the truth and nothing but the truth;
9  that he was thereupon carefully examined upon his
10 oath and his examination reduced to writing under
11 my supervision; that this deposition is a true
12 record of the testimony given by the witness.
13    I further certify that I am neither attorney
14 nor counsel for, nor related to, nor employed by
15 any of the parties to the action in which this
16 deposition is taken, and further that I am not a
17 relative or employee of any attorney or counsel
18 employed by the parties hereto, or financially
19 interested in the action.
20    IN WITNESS THEREOF, I have hereunto set my
21 hand on this 29th day of May, 2000.
22    _____
23         Sarah B. Najemy
24 Notary Public, License No. (#00069)
25 My commission expires: 7/13/2000

## PAGE 234

234

1         INDEX OF EXAMINATION(S)
2  Direct Examination by Mr. Coulon ............. 4
3  Cross-examination by Ms. Freeman ............. 226
4  Redirect Examination by Mr. Coulon ........... 232
5
6         INDEX OF EXHIBIT(S)
7
8  Exhibit 1, Reflex Response Tool Box,
        Bates stamped pages 1441 to 1552 ........ 206
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24 Exhibits held by Attorney Coulon
25

## PAGE 235

235

1              ERRATA SHEET
2  Please note any corrections on this sheet. DO NOT
   mark up the transcript. The ORIGINAL JURAT and
3  ERRATA SHEETS must be notarized (even if there are
   not corrections) and returned within thirty (30)
4  days of receipt to the attorney who took the DIRECT
   EXAMINATION. All other counsel of record must be
5  sent a copy, along with a copy to our office for
   our records.
6  PAGE      LINE              CORRECTION
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19
20  DATE _____       NORRIS JOSEPH YOUNG, JR.
21  Sworn to me this _____ day of _____,
22  2000.
     Notary Public: _____
23
     My Commission Expires: _____
24 SN
25

## PAGE 236

236

1                    JURAT
2
3  * * * * * * * * * * * * * *
   NATIONWIDE MUTUAL INSURANCE
4  COMPANY, ET AL.
5  vs.                          May 25, 2000
6  JOHNSON AGENCY, INCORPORATED
   and BONNIE JOHNSON
7  * * * * * * * * * * * * * *
8    With the addition of the changes, if
9  any, indicated on the errata sheet, the
10 forgoing is a true and accurate transcript
11 of my testimony given in the above-entitled
12 action on May 25, 2000.
13    _____
14         NORRIS JOSEPH YOUNG, JR.
15
16   Subscribed and sworn to before me, the
17 undersigned authority, on this the _____ day
18 of _____, 2000.
19
20
21  Notary Public: _____
22  My Commission Expires: _____
23 SN
24
25

SMITH REPORTERS INCORPORATED