# Exhibit 4

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF CONNECTICUT


   * * * * * * * * * * * * * * *
                                *  CIVIL ACTION NO.
   NATIONWIDE MUTUAL INSURANCE, *  3:00CV1180 (CFD)
   COMPANY,                     *
            PLAINTIFF,           *
                                *
   VS.                          *
                                *
   BRUCE MORTENSEN, DAVID H.    *
   DONALDSON, PATRICIA BLAND, JAMES*
   WARNER, SR., JAMES L. BIRARELLI,*
   JAMES L. BIRARELLI, INC.,    *
   BONNIE JOHNSON, JOHNSON AGENCY, *
   INCORPORATED, ROBERT YORK and *
   JOHN MARCUCILLI,             *
            DEFENDANTS.          *
                                *
   * * * * * * * * * * * * * * *
```

---
            DEPOSITION OF:  GLENN A. BECKWITH
---

    Taken before Irene A. Janazzo, Registered Professional Reporter, Lic./Reg. No. 00085, and Notary Public in and for the State of Connecticut, pursuant to the Federal Rules of Civil Procedure, at the offices of Robinson & Cole, L.L.P., 280 Trumbull Street, Hartford, Connecticut, on April 16, 2001, commencing at 3:00 p.m.

Page 30

1  examining the policy, after going through the
2  complaint, I was instructed by Tim Brady that
3  we were going to follow it with a reservation
4  of rights letter and he would put it together.
5  Q  Let me back up again. You told me that in
6     seven of the eight instances you delivered the
7     reservation of rights letter before you had the
8     complaint.
9  A  No. We had something.
10 Q  Well, what did you have?
11 A  I don't remember.
12 Q  Well, did you ask Mr. Brady at any time after
13    receiving notice of loss any questions about
14    coverage?
15        MR. FELDMAN: Objection. You're
16    asking for attorney-client privilege.
17 BY MR. COULOM:
18 Q  You can answer.
19        MR. FELDMAN: No. You cannot answer.
20    Next question.
21 BY MR. COULOM:
22 Q  Did you go to Mr. Brady because you had legal
23    questions about coverage?
24        MR. FELDMAN: Objection, privilege.
25        MR. COULOM: Are you instructing him

Page 31

1   not to answer?
2        MR. FELDMAN: Yes.
3  BY MR. COULOM:
4  Q  If -- so let me -- just so I understand this,
5     you never made a determination -- an individual
6     determination yourself about coverage in any of
7     these eight matters?
8        MR. FELDMAN: You can answer that.
9  A  No.
10 BY MR. COULOM:
11 Q  Did anyone in the claims department to your
12    knowledge make an analysis of coverage in any
13    of these eight instances?
14 A  In the claims department, no, not to my
15    knowledge.
16        MR. FELDMAN: Are you talking about
17    the commercial claims department?
18        THE DEPONENT: Both. Commercial is
19    what I'm in.
20        MR. FELDMAN: Is that what we're
21    referring to?
22        MR. COULOM: Tim, would you please let
23    him answer.
24        MR. FELDMAN: I want to make sure it
25    was clear.

Page 32

1        MR. HENNESSEY: Didn't you stipulate
2     to all objections except as to form?
3        MR. FELDMAN: We've been through this.
4        MR. COULOM: Can I have my question
5     read back?
6        MR. FELDMAN: No. There's a concern
7     about you asked about claims. I want to
8     know is it the commercial claims unit that
9     you're referring to or is it --
10       MR. COULOM: You'll get a chance to
11    ask.
12       MR. FELDMAN: -- the entire claims
13    department. Wouldn't Tim Brady be
14    considered to be part of the claims?
15       MR. COULOM: You're coaching.
16       MR. HENNESSEY: He's part of claims.
17       MR. COULOM: You're coaching the
18    witness.
19       MR. HENNESSEY: You are.
20       MR. FELDMAN: No, I'm not. Let's move
21    along.
22       MR. COULOM: Don't tell me to move
23    along.
24       MR. FELDMAN: This is a valid concern
25    I have, a point of clarification, and I've

Page 33

1   asked to have it clarified. Now you can
2   proceed.
3        MR. COULOM: You're coaching the
4   witness.
5        MR. FELDMAN: No, I'm not.
6        MR. COULOM: Let me ask my question.
7        MR. HENNESSEY: You're not supposed to
8   make any objection except as to form, and
9   I've been in here for five minutes, and you
10  have been talking continuously, and I think
11  this is very, very inappropriate.
12       MR. COULOM: Let's continue,
13  Mr. Beckwith.
14       Can I have my question read back,
15  please.
16
17       (Reporter read the last
18       question.)
19
20 A  To my knowledge, no.
21 BY MR. COULOM:
22 Q  Okay. Other than Mr. Brady, are you aware of
23    anyone who made any coverage analysis of these
24    eight claims?
25 A  No.

Page 146

1    MR. FELDMAN: This has been asked and
2    answered.
3         Go ahead. You can answer.
4  A  Well, a lot of times if there's a conflict or
5    an uncertainty over coverage, that's where the
6    file is split between two adjusters.
7  BY MR. COULOM:
8  Q  This file wasn't split, right? There's just
9    one file?
10 A  Well, it's split in that the coverage was
11   assigned to someone and the investigatory part
12   was assigned to someone else.
13 Q  Who was assigned the investigatory part?
14 A  I was handling that.
15 Q  And what did you do to investigate?
16 A  The only thing we did was turn the file over to
17   Robinson & Cole for defense.
18 Q  So you didn't perform any investigation?
19 A  Did I, no.
20 Q  Okay. And what does the coverage file consist
21   of?
22 A  I've never seen that.
23 Q  Is there a coverage file?
24 A  I don't know that either.
25 Q  If there's not a conflict of interest, is the

Page 147

1    coverage file normally kept with the
2    investigative file?
3  A  If there's not a conflict, yes.
4  Q  Okay. So the only reason you don't have this
5    coverage portion is because of this conflict of
6    interest?
7  A  Well, we have questions on coverage. I don't
8    know if conflict of interest is the right term
9    here, but obviously there are questions of
10   coverage on this file. So that's why the file
11   was split.
12 Q  Is there a conflict of interest between
13   Nationwide and its insureds in this case?
14 A  I don't know.
15 Q  Do you think the fact that Nationwide is suing
16   its insureds in the underlying case creates a
17   conflict of interest?
18 A  I can't answer that.
19 Q  Did anyone ever suggest to you that there might
20   be a conflict of interest because Nationwide is
21   suing the insureds?
22 A  No.
23 Q  Does that come as a surprise to you?
24 A  That there's -- what's a surprise?
25 Q  That there might be a conflict of interest.

Page 148

1  A  Yes.
2  Q  Why?
3  A  I just never thought of it before, thought
4    about it before.
5  Q  Does Nationwide have any guidelines or policies
6    for determining whether to assign the defense
7    of a matter to independent counsel?
8  A  No.
9  Q  How many instances are you aware where that's
10   been done?
11 A  Independent counsel?
12 Q  Yes.
13 A  Oh, quite a few times.
14 Q  Okay. How many times are you aware where
15   Nationwide has withheld payment of legal fees
16   to independent counsel?
17 A  I'm not privy to that information.
18 Q  Are you aware of any?
19 A  Once again, I'm not privy to that information.
20 Q  Are you aware of any instances?
21 A  No.
22 Q  If the insured has a question -- any of the
23   eight insureds in this case has a question
24   about this matter that they want to direct to
25   Nationwide, who do you think they should

Page 149

1    contact?
2  A  I don't know. I would assume it would be Tim
3    Brady.
4  Q  Why do you assume it would be him?
5  A  Because he's the claims counsel handling these
6    particular claims.
7  Q  And would you look at Exhibit No. 2 for a
8    moment, the last sentence of Exhibit 2, page 8
9    on Exhibit 2.
10 A  Um-hum.
11 Q  Who signed this document?
12 A  Who signed it?
13 Q  Yes.
14 A  Timothy Patrick Brady.
15 Q  Would you read the last sentence of this
16   letter.
17 A  "If you have any questions or information
18   concerning Nationwide's coverage position,
19   please feel free to contact me."
20 Q  So if any of the eight defendants in this case
21   have questions about Nationwide's coverage
22   position, who should they ask?
23 A  Tim Brady.
24 Q  And if they were to ask him, would they be
25   entitled to any information?

Page 162

1  Q   Could I just see Exhibit 3A for a moment.
2  A   3A?
3  Q   Yeah. Do you have any reason to believe that
4      Exhibit 3A was not written and was not sent on
5      Nationwide letterhead from Mr. Feldman's
6      office?
7          MR. FELDMAN: He's already testified
8      he knows nothing about that document.
9  A   I never saw this letter until this afternoon.
10     I know nothing about it.
11         MR. COULOM: I have no further
12     questions.
13         MR. FELDMAN: Thank you, sir.
14         MR. COULOM: I just want to put
15     something on the record. Mr. Feldman, I
16     don't appreciate getting into colloquies
17     with opposing counsel in a deposition.
18     That's the reason why the rules simply say
19     "objection."
20         I understand you have a right to tell
21     a witness not to answer a question if you
22     believe it's privileged, but once you start
23     deviating from the rule that says all
24     objections except as to form are reserved,
25     you invite these discussions that interrupt

Page 163

1   the flow of the deposition. And I don't
2   believe that was the intent of the
3   Magistrate in his ruling.
4       MR. FELDMAN: I think you should take
5   another look at the Magistrate's discovery
6   order, and you'll see that I'm right, but I
7   think you're done with asking questions so
8   we're done for the day.
9
10      (Deposition concluded at
11      6:10 p.m.)

Page 164

1                ERRATA SHEET
2  Please note any corrections on this sheet. Do NOT
   mark up the transcript. The ORIGINAL JURAT and
3  ERRATA SHEETS must be notarized (even if there are
   no corrections) and returned within 30 days of
4  receipt to the attorney who took the DIRECT
   EXAMINATION. All other counsel of record must be
5  sent a copy, along with a copy to our office for our
   records.
6
7  PAGE    LINE        CORRECTION
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22   DATE            GLENN A. BECKWITH
     Sworn to me this _____ day of _____,
23 2001.
     Notary Public: _____
24
     My Commission Expires: _____
25

Page 165

1                    JURAT
2  * * * * * * * * * * * * * * *
3  NATIONWIDE MUTUAL INS. CO.
4  vs.                    April 16, 2001
5  BRUCE MORTENSEN, ET AL.
6  * * * * * * * * * * * * * * *
7      With the addition of the changes, if
   any, indicated on the errata sheet, the
   foregoing is a true and accurate transcript
8  of my testimony given in the above-entitled
9  action on April 16, 2001.
10
11              GLENN A. BECKWITH
12     Subscribed and sworn to before me,
13     the undersigned authority, on this the
14     _____ day of _____, 2001.
15
16     Notary Public
17     My commission expires:
18
19
20
21
22
23
24 (IAJ)
25

Page 166

```
 1          CERTIFICATE OF REPORTER
 2        I, Irene A. Janazzo, a Notary Public duly
 3  commissioned and qualified in and for the State of
 4  Connecticut, do hereby certify that pursuant to notice,
 5  there came before me, on the 16th day of April, 2001, the
 6  following named person, to wit: GLENN A. BECKWITH, who
 7  was by me duly sworn to testify to the truth and nothing
 8  but the truth; that he was thereupon carefully examined
 9  upon his oath and his examination reduced to writing under
10  my supervision; that this deposition is a true record of
11  the testimony given by the witness.
12        I further certify that I am neither attorney nor
13  counsel for, nor related to, nor employed by any of the
14  parties to the action in which this deposition is taken
15  and further that I am not a relative or employee of any
16  attorney or counsel employed by the parties hereto, or
17  financially interested in the action.
18        IN WITNESS THEREOF, I have hereunto set my hand
19  and affixed my seal this 24th day of April, 2001.
20
21            _____
                 Irene A. Janazzo
22            Notary Public, Lic. No. 00085
23  My commission expires: December 31, 2003
24
25
```

Page 167

```
 1              INDEX OF EXAMINATION
 2
 3  Direct Examination by Mr. Coulom.................6
 4
 5
 6              INDEX OF EXHIBITS
 7
 8  Defendants' 1     letter, 3/16/00.............      54
 9  Defendants' 2     letter, 5/4/00..............      81
10  Defendants' 3     letter, 8/25/00.............      96
11  Defendants' 4     letter, 8/31/00.............      99
12  Defendants' 3A    original letter, 8/25/00.....    102
13  Defendants' 4A    original letter, 8/31/00.....    103
14  Defendants' 5     Nationwide's answers and objections to
15                    interrogatories............       112
16  Defendants' 6     Mortensen policy declarations.... 136
17
18
19
20
21
22
23  (Exhibits were retained by Attorney Coulom.)
24
25
```

SMITH REPORTERS, INCORPORATED
Irene A. Janazzo, RMR, CSR
84 Songbird Lane
Farmington, Connecticut 06032

April 24, 2001

Law Offices of Michael Feldman
Michael Feldman, Esq.
10 Waterside Drive, Suite 313
Farmington, CT 06032

In re: Nationwide Mutual Ins. Co. vs. Bruce Mortensen, et al.

Dear Mr. Feldman,

Enclosed please find your copy of the deposition of Glenn A. Beckwith taken on April 16, 2001, in the above-captioned case. The original jurat and errata sheets are also enclosed. Please note that the witness is allowed 30 days to read and sign his deposition as the Practice Book provides.

Please return only the original notarized jurat and errata sheets to Attorney Coulom for filing, along with a copy to our office for our records.

Thank you for your prompt attention to this matter.

Sincerely,

Irene A. Janazzo

cc: Attorney Coulom