**EXHIBIT A**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2004 MAR 31  P 1:41
U.S. DISTRICT COURT
HARTFORD, CT.

NATIONWIDE MUTUAL INSURANCE CO.,
ET AL.,

    Plaintiffs,

v.

PATRICIA BLAND, BRUCE MORTENSEN,
AND DAVID DONALDSON,

    Defendants.

CASE NO. 3:99CV2005(RNC)
3:99CV2006(RNC)
3:99CV2007(RNC)

RULING AND ORDER

Plaintiff Nationwide Mutual Insurance Company and three of its affiliates (collectively "Nationwide") bring these consolidated actions against three former Nationwide agents, Patricia Bland, Bruce Mortensen and David Donaldson, alleging that they are liable for, among other things, breach of contract, breach of fiduciary duty, tortious interference with contract and business relations, and violations of Connecticut's Uniform Trade Secrets Act ("CUTSA"), Conn. Gen. Stat. §§ 35-51, et seq., and Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110b, et seq.[1] The agents have filed counterclaims alleging violations of ERISA and CUTPA, breach of contract, conversion and

---

[1] Nationwide's consolidated amended complaint contains counts for: 1. breach of the duty of loyalty; 2. breach of contract; 3. conversion; 4. civil theft (Conn. Gen. Stat. § 52-564); 5. breach of fiduciary duty; 6. violation of CUTSA; 7. violation of CUTPA; 8. tortious interference with contract rights and other business relations; 9. interference with business expectancies; 10. computer crime (Conn. Gen. Stat. § 53a-251); and 11. unjust enrichment (pled in the alternative).

civil theft.[2] Pending for decision are cross-motions for summary judgment. For reasons set forth below, Nationwide's motion for summary judgment is granted as to the agents' counterclaims but denied as to its own claims against the agents, and the agents' motion is granted as to the CUTSA claim but otherwise denied.

FACTS

Each of the three defendants signed an identical contract with Nationwide entitled Agent's Agreement. By the terms of the contract, each one's relationship with the company was that of an exclusive agent[3] and independent contractor.[4] Pursuant to the

---

[2] Defendants' amended counterclaim contains the following counts: 1. failure to provide benefits required in violation of ERISA; 2. failure to pay deferred compensation in violation of ERISA; 3. breach of contract and the duty of good faith and fair dealing; 4. unfair competition and unfair or deceptive acts or practices in violation of CUTPA; 5. reckless, wilful or wanton disregard of rights entitling the agents to CUTPA punitive damages; and 6. conversion and civil theft (Conn. Gen. Stat. § 52-564).

[3] See Agent's Agreement, paragraph 4:
**Exclusive Representation.** It is agreed . . . that you will represent [Nationwide] exclusively in the sale and service of insurance. Such exclusive representation shall mean that you will not solicit or write policies of insurance in companies other than those parties to this Agreement. . . .

[4] See id., paragraph 1:
**Independent Contractor.** The parties agree that the purpose of this Agreement will be best served by your acting as an independent contractor. Therefore, it is agreed that you are an independent contractor for all purposes.... [Y]ou are solely responsible for paying all . . . taxes. . . . [Y]ou have the right to exercise independent judgment as to time, place, and manner of soliciting insurance, serving policyholders, and otherwise carrying out provisions of this agreement. Insurance being a closely regulated business, it is understood that it will be necessary for [Nationwide] to provide you with certain manuals, forms, records, and such other materials and supplies as
(continued...)

2

contract, the defendants were not permitted to solicit insurance for, or otherwise engage in the insurance business with, any competitor of Nationwide, but otherwise they were permitted to operate their agencies as they saw fit.

When the agents first began to work for Nationwide, they were given large numbers of policyholder files of preexisting Nationwide customers. This was called a "block transfer." From then on, they served these customers and solicited new ones. They maintained policyholder files that contained information relevant to the customers' insurance needs, including documentation they received from both the customers and Nationwide.

The agents also used Nationwide's Agency Office Automation ("AOA") computer system, which linked them with Nationwide and gathered and sorted the information collected in the policyholder files. Each agent used the AOA system pursuant to a lease agreement with Nationwide, in which they agreed "not to copy, disclose, publish, release, transfer, or otherwise make available any software, manuals, or related documentation, in any form, to any person other than [the agents'] employees. . . ." The AOA system was password-protected.

Under the Agent's Agreement, the defendants could qualify

---

[4] (...continued)
are necessary in the conduct of an insurance business. All such property furnished to you by [or on behalf of Nationwide] shall remain the property of [Nationwide] and be returned to [Nationwide]. . . .

3

for deferred compensation payable after termination of the agency relationship unless before the termination they induced or attempted to induce policyholders to cancel or replace policies or let policies lapse.[5] The contract also provided that their right to continue to receive deferred compensation would be forfeited if in the first year after termination they worked in the insurance business within a twenty-five mile radius of their last business location, failed within ten days of termination to return all materials and records provided to them by Nationwide (including copies), or at any time after termination interfered with Nationwide's relationship with a policyholder.[6]

---

[5] See id., paragraph 11:
Agency Security Compensation.
a. Computation of Deferred Compensation Incentive Credits. For each full calendar year you act as an agent . . . [Nationwide] will credit to your account as Deferred Compensation Incentive Credits the percentage set forth below of your DCIC Class Earnings.
b. Extended Earnings Payable Upon Qualified Cancellation of this Agreement.
When you qualify for the Deferred Compensation Incentive Credits, you will also qualify for extended earnings payable upon qualified cancellation of this agreement. . . .
e. Qualified Cancellation.
Unless you have induced or attempted to induce, either directly or indirectly, policyholders to lapse, cancel, or replace any insurance contract in force with [Nationwide], the cancellation of this Agreement shall be a qualified cancellation for the purposes of this Agreement.

[6] See id., paragraph 11:
f. Cessation of Agency Security Compensation.
All liability of the Companies for Agency Security Compensation provided for in paragraph 11 and its subparagraphs shall cease and terminate in the event any one or more of the following shall occur:
(1) You either directly or indirectly, by and for yourself or as an agent for another, or through others as their
(continued...)

4

In August 1999, the defendants terminated their agency relationships with Nationwide. In the months leading up to the terminations, they met with representatives of other insurance companies to discuss possible employment. During these meetings, they shared with the companies information contained in Nationwide's policyholder files concerning prices, computer print-outs of policyholder information obtained from the AOA computer system ("screen prints"), and copies of documents they received from Nationwide relating to their sales and commissions They also began to compete against Nationwide without relocating.

On learning of the agents' activities, Nationwide filed this lawsuit based on diversity jurisdiction contending that the agents were in violation of Connecticut law. The agents countersued claiming that Nationwide was required to pay them deferred compensation and that its suit against them was a sham.

---

[6](...continued)
    agent, engage in or be licensed as an agent, solicitor, representative, or broker or in anyway be connected with the . . . insurance business, within one year following cancellation within a 25 mile radius of your business location at that time; or
(2) You fail to return in good condition within ten days, all materials, records, and supplies furnished to you by the Companies during the course of this Agreement, together with any copies thereof; or
(3) After cancellation of this Agreement, you directly or indirectly induce, attempt to induce, or assist anyone else in inducing or attempting to induce policyholders to lapse, cancel, or replace any insurance contract in force with [Nationwide]; furnish any other person or organization with the name of any policyholder of [Nationwide] so as to facilitate the solicitation by others of any policyholder for insurance or for any other purpose.

DISCUSSION

Summary judgment may be granted if the court is persuaded that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

A. <u>Nationwide's Motion for Judgment On Its Claims</u>

<u>Counts 1, 2 and 5: Breach of Contract and Fiduciary Duty</u>

To prevail on its contract and breach of fiduciary duty claims, Nationwide has the burden of proving that the policyholder information at issue constituted a trade secret or confidential information.[7]  In addition, it must prove that the forfeiture for competition clause contained in paragraph 11(f) of the Agent's Agreement did not permit the defendants to use the information.[8]

---

[7] Nationwide claims that use of the AOA screen prints to compete with Nationwide was an independent violation of the AOA lease agreement's provision prohibiting them from disclosing "any software, manuals, or related documentation, in any form, to any person other than [the agents'] employees" by providing competing companies with AOA screen prints. Nationwide argues that the phrase "related documentation" is broad enough to include the screen prints. However, read in context, this term must be understood to refer to the more specific terms, "software" and "manuals," which relate to the functioning of the AOA system, not to the information stored within it. Thus, the agents did not breach the AOA lease agreement when they took the screen prints.

[8] Nationwide concedes that under the forfeiture for competition clause, the defendants were permitted to compete with the company to keep the customers they serviced, but argues that they were not permitted to do so using information they learned as Nationwide's agents. In the absence of an agreement to the contrary, an agent may prepare to compete with a principal while still contractually bound to the principal, but may not use the

(continued...)

6

A number of courts have decided that Nationwide's policyholder files are not protected by the law of trade secrets. Nationwide Mut. Ins. Co. v. Stenger, 695 F. Supp. 688, 691 (D. Conn. 1988); Nationwide Mut. Ins. Co. v. Fleming, No. 99-1417, slip. op. at 17-30 (W.D. Pa., Oct. 2, 2001); Nationwide Mut. Ins. Co. v. Piper, Nos. 78328 and 78957 slip op. (N.Y. Supreme Ct., Dec. 7, 2001). I agree. CUTSA defines trade secrets as "information . . . that: (1) Derives independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." C.G.S. § 35-52. Courts have considered numerous factors in determining whether information is a trade secret: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information;

---

[8](...continued)
principal's confidential information during this preparatory period. Las Luminarias v. Isengard, 92 N.M. 297, 302 (N.M. Ct. App. 1978), citing Town & Country House & Homes Service, Inc. v. Evans, 150 Conn. 314 (1963) and Allen Manufacturing Co. v. Loika, 145 Conn. 509 (1958). Moreover, even after an agency relationship has terminated, agents may not "use trade secrets, or other confidential information, which [they have] acquired in the course of [their] employment, for [their] own benefit or that of a competitor to the detriment of [their] former employer." Elm City Cheese Co. v. Federico, 251 Conn. 59, 69 (1999), quoting Allen Manufacturing Co. v. Loika, 145 Conn. 509, 514 (1958).

7

(4) the value of the information to the employer and competitors; (5) the amount of effort or money expended by the employer in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others; (7) the method by which the former agent acquired the alleged secret; (8) the extent to which the principal-agent relationship was a confidential or fiduciary one; (9) the former agent's personal relationship with the customers; and (10) any unfair advantage accruing to the former agent from use of the former principal's alleged secret. Stenger, 695 F. Supp. 691, citing Holiday Food Co. v. Munroe, 37 Conn. Supp. 546, 551 (1981).

Nationwide has not demonstrated that the contents of the policyholder files were adequately protected to achieve trade secret status. It points to no contractual provision requiring agents to protect the secrecy of the files, and agents were free under the contract to make and keep their own notes about the contents of the files. See Animal Health Clinic v. Autorino, 1998 Conn. Super. LEXIS 801 at *8 (Mar. 13, 1998). In addition, the forfeiture for competition clause clearly permits departing agents to retain a list of the names of the customers they serviced for Nationwide. With customers' names in their rightful possession, agents can obtain policyholder file information directly from the customers and other sources. Fleming, No. 99-1417 at 29.

Though not entitled to trade secret protection under CUTSA,

8

the information in Nationwide's policyholder files may be protected under Connecticut common law. The duty of loyalty prohibiting an agent from disclosing or using the principal's information applies not only to trade secrets, but also to confidential information. <u>Allen Manufacturing Co. v. Loika</u>, 145 Conn. 509, 514 (1958). Connecticut courts have not formulated a test for determining whether information is confidential. However, others have decided that confidential information "not technically meeting the strict requirements of trade secrets may be protected." <u>Lamorte Burns & Co., Inc., v. Walters</u>, 167 N.J. 285, 300 (2001). In Connecticut, improper use of confidential information can breach the duty of loyalty, and can also form the basis of a contract claim. <u>Allen Manufacturing</u>, 145 Conn. 509, 514 (1958) ("The law will import into the contract . . . a prohibition against a betrayal of [the principal's] trust and confidence against imparting confidential information to others.").

Whether information should be deemed to be confidential depends on the relationship between the parties and their mutual expectations. <u>Roboserve, Ltd. v. Tom's Foods, Inc.</u>, 940 F.2d 1441, 1456 (11th Cir. 1991); <u>Lamorte Burns & Co.</u>, 167 N.J. at 299; Restatement (Second) of Agency § 395 (1958). The primary source of guidance as to the expectations of the parties here is the Agent's Agreement. The contract's forfeiture for competition clause clearly permits departing agents to compete with Nationwide for the customers they serviced, but it is ambiguous

9

as to whether the agents may use information in the policyholder files and AOA screen prints for that purpose. On the one hand, the right to use this information may be implicit in the right to compete, particularly since the contract, which clearly asserts Nationwide's ownership of certain other materials, does not address the ownership or use of this information. Alternatively, it is possible that the contract's silence on this specific point evidences an intent to accept the default duty of loyalty and thereby prohibit the agents from competing on the basis of confidential information.[9]

This ambiguity concerning the parties' contractual intent cannot be resolved as a matter of law. Nationwide contends that its interpretation of the Agent's Agreement is supported by custom and usage, and it presents an affidavit from an expert witness, Richard Stewart, asserting that the exclusive-independent-agency relationship would not be economically feasible if the insurance company was not the exclusive owner of the policyholder information. But a jury would not have to believe this evidence and defendants offer conflicting evidence.

---

[9] Nationwide contends that general agency principles import into the Agent's Agreement a provision giving it exclusive ownership of the files and screen prints. But that is not true of the general agency principles that govern the insurance industry. See Romac Resources, Inc. v. Hartford Acci. & Indem. Co., 378 F. Supp. 543, 549-50 (D. Conn. 1974). Nationwide also argues that the AOA Lease defines the screen prints as its exclusive property because it grants Nationwide ownership of "related documentation." As noted earlier, however, "related documentation" clearly refers to documents regarding the AOA System itself (i.e., its hardware and software), not the screen prints.

10

Accordingly, Nationwide's motion for summary judgment on these counts must be denied.

### Count 6: CUTSA

Nationwide is not entitled to summary judgment on this count because, as just discussed, information is a "trade secret" under CUTSA *only* if it is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Conn. Gen. Stat. §35-51(d). Nationwide provides no evidence of any efforts to maintain the secrecy of the information in the policyholder files. It provides such evidence with regard to the screen prints, but the prints concededly contain the same information as the files. Accordingly, its motion for summary judgment on this count is denied.

### Counts 7-11: CUTPA, Tortious Interference, Computer Crime And Unjust Enrichment

Nationwide contends that it is entitled to summary judgment on these counts because the defendants' activities were unfair, immoral and interfered with its relationship with policyholders. As discussed earlier, however, it is not clear that the agents breached either the Agency Agreement or a common law duty. Thus, summary judgment cannot be granted on these counts either.[10]

---

[10] Defendants contend that Nationwide may not pursue count 11, the unjust enrichment count, on the ground that a party may not assert a claim for unjust enrichment while also asserting claims for breach of contract. However, under Connecticut law, a party may plead unjust enrichment in the alternative.

11

B.  Defendants' Motion for Judgment on Nationwide's Claims

Defendants move for summary judgment on all counts in the consolidated amended complaint.  For the reasons set forth above, summary judgment is appropriate on the CUTSA count (count 6), but not otherwise.[11]

C.  Nationwide's Motion for Judgment on the Counterclaims

Nationwide is entitled to summary judgment on all counts in defendants' amended counterclaim for the reasons outlined below.

Counts 1 and 2: ERISA

The agents claim that, under ERISA, they are entitled to receive various benefits, including payment of their deferred compensation.  To prevail on these claims, they must prove that they were employees of Nationwide and, as such, entitled to the protections of ERISA.  Nationwide contends that ERISA is inapplicable because the defendants were independent contractors rather than employees.  I agree.

The issue of the defendants' status is governed by the common law test.  See Nationwide v. Darden, 503 U.S. 318, 323-24 (1992).  The Second Circuit has emphasized these factors: (1) the right to control the agents' manner and means of production; (2) the agents' level of skill; (3) whether the hiring party provided

---

[11]  Much of the briefing is devoted to the question whether Nationwide's claims are barred by the outcome of other suits it has lost.  In particular, defendants argue that Nationwide is estopped by rulings in Nationwide Mut. Ins. Co. v. Fleming, supra, and Nationwide Mut. Ins. Co. v. Piper, supra.  Defendants have not demonstrated that the elements of estoppel are satisfied.

12

employee benefits; (4) the tax treatment of the agents; and (5) the right to assign other projects to the agents. Graham v. James, 144 F.3d 229, 235 (2d Cir. 1998).

Applying these factors, ERISA is inapplicable because the agents were independent contractors, not employees. Wolcott v. Nationwide Mut. Ins. Co., 884 F.2d 245, 251 (6th Cir. 1989). The contract itself identifies the relationship as such, and also requires the agents to report and pay their own taxes. The agents owned their own businesses and exercised independent skill as salespeople to sell insurance. In most respects, moreover, they were permitted by contract to run their businesses as they saw fit. For instance, they could hire their own employees and establish office procedures. Id.

### Count 3: Breach of Contract

Defendants claim that Nationwide breached the Agent's Agreement by bringing this lawsuit while also keeping their deferred compensation. Nationwide correctly argues that this claim is based on a misreading of the Agreement. The forfeiture for competition clause covers an agent's simple competition with Nationwide. It does not bar Nationwide from seeking relief if an agent, in addition to competing, misappropriates confidential information.

### Counts 4 and 5: CUTPA

These counts are also based on Nationwide's filing of this lawsuit. Filing a single lawsuit can violate CUTPA only if it is a "sham." See Zeller v. Consolini, 59 Conn. App. 545, 553 (2000)

(2000). This lawsuit consolidates three actions, but as each defendant has been sued only once, the logic underlying the decisions holding that one non-sham lawsuit cannot violate CUTPA fully applies. This action cannot be considered a sham because Nationwide's claims are not objectively meritless.

### Count 6: Civil Theft/Conversion

Defendants claim that Nationwide has stolen and converted their deferred compensation by treating it as forfeited. Since they concede taking the action that triggers forfeiture of deferred compensation under the Agent's Agreement, their claim is without merit.

### CONCLUSION

Accordingly, Nationwide's motion for summary judgment [Doc. #204] is granted as to all counts of the amended counterclaim, but denied as to the counts of its consolidated amended complaint. Defendants' motion for summary judgment [Doc. #197] is granted as to count six of the consolidated amended complaint but otherwise denied.

It is so ordered.

Dated at Hartford, Connecticut this 30th day of March 2003.

_____
Robert N
United State

*[handwritten: This date should be 3/30/2004 - see file date on front]*

14