**<u>EXHIBIT B</u>**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, ET AL., | CIVIL NO.: 3:99CV2005 (RNC) |
| Plaintiffs, | |
| v. | |
| PATRICIA BLAND, | |
| Defendant. | |

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, ET AL., | CIVIL NO.: 3:99CV2006 (RNC) |
| Plaintiffs, | |
| v. | |
| DAVID DONALDSON, | |
| Defendant. | |

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY, ET AL., | CIVIL NO.: 3:99CV2007 (RNC) |
| Plaintiffs, | |
| v. | |
| BRUCE J. MORTENSEN, | |
| Defendant. | MARCH 23, 2001 |

## AMENDED COUNTERCLAIM

## FIRST COUNT

1.     David Donaldson is a citizen of the State of Connecticut.

2.    Patricia Bland is a citizen of the State of Connecticut.

3.    Bruce Mortensen is a citizen of the State of Connecticut.

4.    Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Variable Life Insurance Company, Nationwide Property and Casualty Insurance Company, Nationwide General Insurance Company and Nationwide Life Insurance Company, are corporations incorporated in the State of Ohio and each has its principal place of business in Ohio. Colonial Insurance Company of California is a corporation incorporated in the State of Wisconsin and its principal place of business is in Ohio. These seven corporations are hereinafter collectively referred to as "Nationwide."

5.    The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.    Jurisdiction is based on 29 U.S.C. § 1132(e) and (f) and/or on 28 U.S.C. § 1332 and § 1367.

7.    Commencing in 1992, David Donaldson became affiliated with Nationwide in the sale of insurance policies issued by Nationwide.

8.    Commencing in 1993, Patricia Bland became affiliated with Nationwide in the sale of insurance policies issued by Nationwide.

9.    Commencing in 1993, Bruce Mortensen became affiliated with Nationwide in the sale of insurance policies written by Nationwide.

10.    In or about June 1, 1992, Mr. Donaldson signed a contract drafted by Nationwide. (A copy of the standard contract form signed by Donaldson is attached hereto as Exhibit A and is made a part of this paragraph).

-2-

11.    In or about April 1, 1993, Ms. Bland signed a contract drafted by Nationwide. (A copy of the standard contract form signed by Bland is attached hereto as Exhibit B and is made a part of this paragraph).

12.    In or about July 1, 1993, Mr. Mortensen signed a contract drafted by Nationwide. (A copy of the standard contract form signed by Mortensen is attached hereto as Exhibit C and is made a part of this paragraph).

13.    Other individuals who contracted with Nationwide to sell its products during the period when Donaldson, Bland and Mortensen were under contract to Nationwide, had signed similar contracts containing language substantially identical to that found in Exhibit A, B and C.

14.    In particular, each such contract contained language substantially identical to paragraph 11 in Exhibit A, B and C.

15.    Among the contractees who was working pursuant to such a substantially identical contract was Robert Darden.

16.    Commencing in or around November 8, 1983, Mr. Darden and others who also had substantially identical contracts began legal proceedings in the United States District Courts, the goal of which was to establish that they were under the control of Nationwide and, therefore, the benefits accrued pursuant to their contracts' provisions, which contracts included provisions that were the same as or substantially the same as paragraph 11 of Exhibit A, B and C, were protected by 29 U.S.C. § 1001, *et seq.* (hereinafter collectively referred to as "ERISA").

17.     Throughout legal proceedings instituted by Mr. Darden and others, the goals of which were to obtain ERISA protection, Nationwide took the position that contractees such as Mr. Darden were not subject to its control, were free to terminate their relationships with Nationwide at any time and were thereafter free to submit information concerning their customers who owned policies with Nationwide to other companies, to solicit both their customers and such other companies, to offer replacement policies to customers who owned Nationwide policies and to use their files and other information obtained by them during their period of contractual relationship with Nationwide in order to compete with Nationwide.

18.     Throughout the proceedings instituted by Mr. Darden and others, Nationwide never claimed or contended that it owned or retained the exclusive right to the possession and use of the files of or information contained in the files of contractees such as Mr. Darden, nor that contractees such as Mr. Darden were prohibited by their contracts from retaining and using such information or from providing same to competitors of Nationwide in order to obtain quotes for the issuance of policies to the customers of such contractees following their terminations.

19.     To the contrary it contended throughout those proceedings that contractees were free to terminate, subject only to forfeiture of their Agency Security Compensation, and that after termination such former contractees had the right to retain their files, to solicit competing quotes, to provide customer names and insurance information to competitors and to compete with Nationwide for the sale of non-Nationwide insurance

-4-

products to third parties, including customers of such contractees who were insured by Nationwide during such contract period.

20.    In addition, it contended that the only proscription on such activities of such contractees after termination was the forfeiture provisions in their contracts, which provisions were substantially similar if not identical to the provisions found in paragraph 11 of Exhibit A, B and C.

21.    In support of such contention Nationwide filed pleadings with the United States Supreme Court, which included the following representation:

> Darden asserts that Nationwide "owned" his agency's policy expirations (Respondent's Brief at 43), as if Nationwide had an exclusive right to solicit future business from Darden's clientele when their policies came due for renewal or expiration. That assertion is false. Under the agreement between Darden and Nationwide, neither party held such an exclusive right: Nationwide retained the right to solicit its policyholders and thus to compete with Darden for their future business (JA 11, P10), just as Darden could (and did) compete with Nationwide for that business if he considered it more valuable than the compensation Nationwide agreed to pay if he refrained from so doing. (See JA 11-18, P11; JA 51).[4]
>
> > Fn.[4]    Darden's assertion that Nationwide could prevent him from competing by enforcing a restrictive covenant in state court (Respondent's Brief at 38) is false. By its terms, the restrictive covenant in Darden's agreement ceased to apply after his fifth year as a Nationwide agent (JA 18-19, P12), and Darden was a Nationwide agent for eighteen years. (See Pet. App. 33a). After the fifth year, the contract permitted Darden to solicit Nationwide policyholders but offered him compensation (including the Deferred Compensation Incentive Credits in issue here) if he refrained from doing so. (JA

17, P11). At trial, Darden expressly
acknowledged that this compensation was
offered as a "surrogate" for policy expirations
and was of "rough[ly] equivalent . . . value."
(Tr. 70).

22.     The United States Supreme Court accepted the contentions of Nationwide

and ruled in Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 112 S.Ct. 1344, 117

L.Ed. 2d 581 (1992), that the facts offered by Nationwide in support of its claim that it

did not control contractees sufficiently to make them "employees" for the purpose of

ERISA protection raised issues requiring the lower court to reconsider the finding that

Mr. Darden was an "employee." The case was, therefore, reversed and remanded.

23.     Following its success in the United States Supreme Court, Nationwide

began to develop and implement new policies and practices the goals of which were to

impose the type of control that it had denied exercising in the legal proceedings pursued

by contractees such as Mr. Darden.

24.     One such practice involved the imposition of the requirement that all

contractees lease computers and software from Nationwide at their own expense.

25.     While the stated purpose of such leasing was to replace the paper files

maintained by the contractees with a paperless file system, Nationwide configured such

computer system so that it had access to all the information inputted by the contractees

and could review and retrieve such information at any time, without the contractees'

knowledge or consent.

26.    In addition, Nationwide adopted the practice of claiming that the information obtained and inputted by the contractees somehow became materials or supplies provided to them by Nationwide, that such information constituted the sole property of Nationwide, and that such information was not available for use by the contractees upon termination notwithstanding the provisions found in paragraphs 1 and 11f(2) of Exhibit A, B and C.

27.    In order to bolster its new post-Darden position Nationwide unilaterally adopted self-serving codes of ethics, rules and regulations, policies and procedures and mandatory training, the purposes of which were to assert control over its contractees, and to claim exclusive ownership of and control over the particular information that it had denied controlling in the proceedings instituted by its contractees, including Mr. Darden.

28.    In adopting such positions Nationwide ignored the terms of its contracts, and in particular, ignored the express provisions of paragraphs 1, 11 and 17 of such contracts.

29.    On August 31, 1999, Bland, Donaldson and Mortensen each terminated their respective contracts with Nationwide.

30.    Donaldson, Mortensen and Bland then commenced to sell insurance products provided by other carriers.

31.    As a result, Nationwide has taken the position that Donaldson, Bland and Mortensen have each forfeited all of their rights to those retirement and deferred compensation benefits, that each had accrued over the years, and which in the aggregate exceeded $809,470.00.

32.    Commencing in or about January of 1998 and continuing into 2000, a significant number of contractees had exercised their right to terminate their contracts and to compete with Nationwide.

33.    In each such instance Nationwide claimed that said contractees had forfeited their right to their accrued retirement and compensation benefits.

34.    Nonetheless, Nationwide undertook a policy of suing selected contractees in order to deprive them of their contractual rights to solicit, to compete and to retain the possession and use of all information obtained during their period as contractees.

35.    Nationwide targeted Donaldson, Bland and Mortensen for such a lawsuit.

36.    The actions against Bland, Donaldson and Mortensen and the actions filed against other contractees had and have the additional goal of intimidating the remaining present or former contractees, in order to further control the nonterminated contractees into staying under contract to Nationwide and in order to cause the nonsued terminated contractees to fear retribution, if they support those who have been sued.

37.    In pleadings filed by Nationwide in such other lawsuits, which pleadings were and are subject to Federal Rules of Civil Procedure (hereinafter "FRCP"), Rule 11, in oral representations made on behalf of Nationwide and in sworn testimony by Nationwide representatives during proceedings in certain federal and state court actions, Nationwide has claimed in words or substance that one, some or all of the following is or are true, when in fact they are not true:

   a.    the positions being taken in presently pending lawsuits are the same positions held by Nationwide prior to and during the Darden litigation;

-8-

b.      the contracts clearly and unambiguously provide that any information with respect to existing or potential customers cannot be used in order to compete with Nationwide following termination;

c.      the contracts clearly and unambiguously prohibit the transmission by a contractee, following termination, of the contents of any files, whether paper or computer stored to any competitors of Nationwide;

d.      Nationwide has always held the position that the provisions of their contracts, and prior versions thereof, clearly and unambiguously provide that any files, whether paper or computer-generated, which were created and maintained by contractees during their period of relationship with Nationwide, are the sole and exclusive property of Nationwide and can only be used, after termination, by Nationwide;

e.      any attempt by terminated contractees to use the paper or paperless files or any other materials created by them constitutes civil theft subject to penal sanctions and any attempt to use the computer stored files, which they created, is a crime;

f.      contractees of Nationwide are the captives of Nationwide;

g.      the businesses of terminated contractees, except for real estate or personal property owned by them, belong exclusively to Nationwide;

h.      terminated contractees owe continuing fiduciary duties to Nationwide not to solicit policyholders of, not to submit customer information to competitors of, and not to compete with Nationwide through the use of the

-9-

contents of any paper or computer-generated files created and maintained by such contractees prior to their terminations;

      i.    terminated contractees owe continuing duties of loyalty to Nationwide not to solicit policyholders of, not to submit customer information to competitors of and not to compete with Nationwide through the use of the contents of any paper or computer generated files created and maintained by them prior to their terminations.

38.    Further, notwithstanding Nationwide's more recently contrived claims of pre- and post-termination control over the abilities of Bland, Donaldson, Mortensen and others to engage in the business of selling insurance, it continues to take the position that it can forfeit its obligations with respect to their retirement benefits and deferred earnings.

39.    By virtue of the actions taken by Nationwide with respect to Bland, Donaldson, Mortensen and others and its assertions of control over both existing and terminated contractees, Nationwide has in a legal sense made such contractees, including Bland, Donaldson and Mortensen, its "employees" within the meaning of ERISA, and, therefore, Bland, Donaldson and Mortensen are each entitled to the ERISA protections applicable to their accrued and vested pension benefits and deferred earnings.

40.    Notwithstanding such protection, Nationwide has violated and continues to violate the mandates of ERISA in one or more of the following respects:

      a.    it has failed to protect the nonforfeitable benefits accrued by Bland, Donaldson and Mortensen in violation of 29 U.S.C. § 1053;

b.    it has failed to set up a plan containing the features required by 29 U.S.C. § 1102, which features are for the protection of Bland, Donaldson and Mortensen;

c.    it has failed to create a trust for the protection and benefit of Bland, Donaldson and Mortensen as required by 29 U.S.C. § 1103;

d.    it has illegally used benefits of Bland, Donaldson and Mortensen for its own benefit, in violation of 29 U.S.C. § 1103;

e.    it has engaged in prohibited transactions in violation of 29 U.S.C. § 1106;

f.    it has breached the fiduciary duties it owes to Bland, Donaldson and Mortensen in violation of 29 U.S.C. § 1109;

g.    it has imposed illegal forfeiture provisions in violation of 29 U.S.C. § 1110;

h.    it has failed to obtain the bond required for the protection of Bland, Donaldson and Mortensen in violation of 29 U.S.C. § 1112;

i.    it has failed to provide Bland, Donaldson and Mortensen with the notice required by 29 U.S.C. § 1133;

j.    it has in all respects failed to protect the benefits accrued by Bland, Donaldson and Mortensen in violation of the requirements of and the public policy established by ERISA.

41.    In addition, or alternatively, Nationwide is barred from denying that the terminated contractees, including Bland, Donaldson and Mortensen, are "employees"

whose accrued benefits are therefore subject to ERISA protection, because it either committed fraud upon the United States courts in their prior litigation with contractees, such as Mr. Darden, or it is currently committing a fraud on the United States courts by taking positions directly contrary to those taken in such prior litigation.

42.     In addition, or alternatively, Nationwide is estopped from denying control over the terminated employees, including Bland, Donaldson and Mortensen, sufficient to make them "employees" for purposes of ERISA protection because of the pleadings filed, statements made and testimony given by Nationwide's representatives in suits presently pending or previously disposed of in various state and federal courts.

## SECOND COUNT

1.-42.  Paragraphs 1 through 42 of the First Count are made corresponding paragraphs 1 through 42 of the Second Count.

43.     The benefits accrued by Bland, Donaldson and Mortensen pursuant to paragraph 11 of his contract are benefits contributed by them as "employees", within the meaning of ERISA.

44.     Such contributions resulted from Nationwide's control of commissions earned by contractees, which commissions have been kept below rates provided by competitors with the differentials constituting contributions to the retirement and compensation benefits accruing in favor of Bland, Donaldson and Mortensen.

45.     Nationwide's attempt to retain such benefits is illegal and contravenes the express protections mandated by ERISA.

46.    Nationwide's actions have been the result of its intentional, willful, wanton or reckless plan to subvert the public policy of and the protections provided by ERISA.

**THIRD COUNT**

1.-12.    Paragraphs 1 through 12 of the First Count are made corresponding paragraphs 1 through 12 of the Third Count.

13.    Exhibit A, B and C further contains an implied duty of good faith and fair dealing running from Nationwide to Bland, Donaldson and Mortensen.

14.    On August 31, 1999, Bland, Donaldson and Mortensen terminated their contracts with Nationwide.

15.    Following their terminations, Nationwide converted Bland's, Donaldson's and Mortensen's deferred retirement and compensation benefits, then amounting in the aggregate to over $809,470.00, to its own use and benefit.

16.    Notwithstanding its claim of forfeiture pursuant to paragraph 11 of Exhibit A, B and C, Nationwide refused to afford and continues to interfere with Bland's, Donaldson's and Mortensen's exercise of the post-termination rights afforded to each of them by said paragraph 11 of Exhibit A, B and C.

17.    As part of such ongoing interference, Nationwide has sued Bland, Donaldson and Mortensen in an effort to stop them from exercising their contractual rights.

18.    As a result of Nationwide's efforts to interfere with Bland's, Donaldson's and Mortensen's exercise of their contractual rights, Nationwide has breached its contract with Bland, Donaldson and Mortensen in one or more of the following respects:

-13-

a.     it has interfered and continues to try and interfere with their right to compete freely with Nationwide;

b.     it has interfered and continues to try and interfere with their right to keep materials, records and supplies, which Nationwide claims that it furnished to them;

c.     it has interfered and continues to try and interfere with their right to induce policyholders of Nationwide to lapse, cancel or replace policies in force with Nationwide;

d.     it has interfered and continues to try and interfere with their right to furnish other persons or organizations with the names of Nationwide policyholders, so as to facilitate the solicitation of such policyholders for the purchase of insurance or any other purpose;

e.     it has interfered and continues to try and interfere with their right to compete freely by falsely claiming that materials, records or supplies created by Bland, Donaldson and Mortensen or obtained by Bland, Donaldson and Mortensen from sources other than Nationwide are nonetheless the exclusive property of Nationwide, notwithstanding the absence of any such provision in Exhibit A, B and C;

f.     it has interfered and continues to try and interfere with Bland's, Donaldson's and Mortensen's right to compete freely by falsely accusing Bland, Donaldson and Mortensen of breach of a duty of loyalty and/or breach of contract and/or conversion and/or civil theft and/or contract interference and/or

-14-

interference with business relations and/or violation of the Connecticut Unfair Trade Practices Act and/or violation of the Connecticut Uniform Trade Secrets Act and/or breach of a fiduciary duty and/or unjust enrichment.

19.    One, more or all of the claims set forth in the previous paragraph constitute breaches of Nationwide's duty of good faith and fair dealing either on their face or for one or more of the following reasons:

a.    it or they are not made in good faith and fairly because Nationwide knows that the contract it drafted does not say what it claims it says;

b.    it or they are not made in good faith and fairly because Nationwide knows that it has made contrary claims on prior occasions when its pecuniary interests were better served by espousing such contrary views;

c.    it or they are not made in good faith or fairly because Nationwide is using court proceedings against Bland, Donaldson and Mortensen in order to frighten former contractees into silence or submission;

d.    it or they are not made in good faith and fairly because Nationwide is using the lawsuit against Bland, Donaldson and Mortensen in order to hold present contractees captive by suppressing their right to consider exercising or exercising their contract rights to terminate their relationship with and compete with Nationwide.

20.    By reason of each, some or all of the foregoing breaches, Bland, Donaldson and Mortensen have been deprived of his retirement and deferred compensation benefits,

has been required to incur legal fees, and has had his rights to work and to earn interfered with.

## FOURTH COUNT

1.-21. Paragraphs 1 through 19 of the Third Count and paragraphs 13 and 14 of the First Count are made corresponding paragraphs 1 through 21 of the Fourth Count.

22. During most of the years when Bland, Donaldson and Mortensen were under contract with Nationwide, Nationwide took the position that contractees such as Bland, Donaldson and Mortensen were not subject to its control, were free to terminate their relationships with Nationwide at any time and were thereafter free to submit information concerning their customers who had policies issued by Nationwide to other companies, to solicit both their customers and such other companies, to offer replacement policies to customers who had policies issued by Nationwide and to use their files and other information obtained by them during their period of contractual relationship with Nationwide in order to compete with Nationwide.

23. However, commencing in the 1990's Nationwide began to develop and implement new policies and practices the goals of which were to impose controls on its contractees, which controls were inconsistent with and contrary to the provisions of its contracts, including Exhibit A, B and C.

24-26. Paragraphs 24 through 26 of the First Count are made corresponding paragraphs 24 through 26 of the Fourth Count.

27. In order to bolster its efforts to control its contractees Nationwide unilaterally adopted self-serving codes of ethics, rules and regulations, policies and

procedures and mandatory training requirements, the purposes of which were not only to assert such control over its contractees, but also to claim exclusive ownership of and control over the client information that its contractees accumulated during the course of their contract engagements.

28-36.  Paragraphs 28 through 36 of the First Count are made corresponding paragraphs 28 through 36 of the Fourth Count.

37.   In pleadings filed by Nationwide and in oral representations made on behalf of Nationwide and in sworn testimony by Nationwide representatives during proceedings in a state court action and in other actions, Nationwide has claimed in words or substance that one, some or all of the following is or are true, when in fact it is or they are not true:

a.   the positions being taken in such lawsuits are the same positions taken in earlier lawsuits and are consistent with the views held by Nationwide during most of the years when Bland, Mortensen and Donaldson were under contract;

b.   the contracts clearly and unambiguously provide that any information with respect to existing or potential customers cannot be used in order to compete with Nationwide following termination;

c.   the contracts clearly and unambiguously prohibit the transmission by a contractee, following termination, of the contents of any files whether paper or computer-stored to any competitors of Nationwide;

d.   Nationwide has always held the position that the provisions of their contracts, and prior versions thereof, clearly and unambiguously provide that any

-17-

files, whether paper or computer-generated, which were created and maintained by contractees during their period of relationship with Nationwide, are the sole and exclusive property of Nationwide and can only be used, after termination, by Nationwide;

e.    any attempt by terminated contractees to use the paper or paperless files or any other materials created by them constitutes civil theft subject to penal sanctions and any attempt to use the computer-stored files, which they created, is a crime;

f.    contractees of Nationwide are the captives of Nationwide;

g.    the businesses of terminated contractees, except for real estate or personal property owned by them, belong exclusively to Nationwide;

h.    terminated contractees owe continuing fiduciary duties to Nationwide not to solicit policyholders of, not to submit customer information to competitors of, and not to compete with Nationwide through the use of the contents of any paper or computer-generated files created and maintained by such contractees prior to their terminations;

i.    terminated contractees owe continuing duties of loyalty to Nationwide not to solicit policyholders of, not to submit customer information to competitors of and not to compete with Nationwide through the use of the contents of any paper or computer-generated files created and maintained by them prior to their terminations.

38.    Paragraph 38 of the First Count is made corresponding paragraph 38 of the Fourth Count.

39.    The conduct described in the aforesaid paragraphs separately or collectively constituted and continues to constitute unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of Nationwide's trade or commerce.

40.    As a consequence of such unfair competition or unfair or deceptive acts or practices, Bland, Donaldson and Mortensen have each suffered ascertainable losses of money, including the loss of this accumulated retirement and deferred compensation benefits, the cost of defending themselves in this lawsuit, and the effects of Nationwide's interferences with their right to work and earn, which losses are subject to recovery pursuant to Conn. Gen. Stat. § 42-110g(a).

41.    In addition, Bland, Mortensen and Donaldson have each incurred and continues to incur costs and attorneys' fees in the prosecution of this action, which costs and fees are subject to recovery pursuant to Conn. Gen. Stat. § 42-110g(d).

**FIFTH COUNT**

1.-41.  Paragraphs 1 through 41 of the Fourth Count are made corresponding paragraphs 1 through 41 of the Fifth Count.

42.    One, more or all of Nationwide's acts of unfair competition or unfair or deceptive acts or practices were undertaken in reckless, willful or wanton disregard of the rights of Bland, Donaldson and Mortensen, and, therefore, warrant an award of punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a).

## SIXTH COUNT

1.-19.    Paragraphs 1 through 19 of the Third Count are made corresponding paragraphs 1 through 19 of the Sixth Count.

20.    The actions of Nationwide in interfering with and refusing to honor their contract rights were done in reckless, willful or wanton disregard for the rights of Bland, Donaldson and Mortensen.

21.    Under such circumstances, the actions of Nationwide in keeping Bland's, Donaldson's and Mortensen's money constituted the unlawful conversion of funds held for the benefit of Bland, Donaldson and Mortensen, and Nationwide was, therefore, stealing their retirement and deferred compensation benefits, in violation of Conn. Gen. Stat. § 52-564, which benefits, at the time of such theft, exceeded in the aggregate of $809,470.00.

WHEREFORE, Bland, Donaldson and Mortensen claim:

1.    an accounting for and payment of all sums accumulated by each of them as retirement and deferred compensation benefits;

2.    an accounting for and payment of all earnings or benefits obtained by Nationwide through the use of Bland's, Donaldson's and Mortensen's retirement and deferred compensation benefits;

3.    interest on all amounts accounted for;

4.    attorneys' fees and costs;

5.    exemplary or penal damages to the extent allowed by ERISA;

-20-

6.  compensatory damages;

7.  statutory damages pursuant to Conn. Gen. Stat. § 42-110g(a);

8.  punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a);

9.  attorneys' fees and costs pursuant to Conn. Gen. Stat. § 42-110g(d);

10. treble damages pursuant to Conn. Gen. Stat. § 52-564.


DEFENDANTS,
PATRICIA A. BLAND, BRUCE J.
MORTENSEN and DAVID H.
DONALDSON


By: _____
Frank F. Coulom, Jr. (ct05230)
fcoulom@rc.com
Maria T. Ackley (ct18118)
mackley@rc.com
Edward F. Hennessey (ct04222)
ehennessey@rc.com
David Thomas Ryan (ct05713)
dryan@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
(860) 275-8200
(860) 275-8299 (fax)

-21-

## CERTIFICATION

This is to certify that a copy of the foregoing was served by first class mail,

postage prepaid, on March 23, 2001, to the following:

Deborah S. Freeman, Esq.
Miriam Dowd, Esq.
Jamie Fried, Esq.
Nicole Anker, Esq.
Bingham Dana LLP
One State Street
Hartford, CT 06103-3178

Frank F. Coulom, Jr.

-22-