UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NATIONWIDE MUTUAL | : | |
| INSURANCE CO., | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | Civil Action No. |
| | : | 3:00 CV 1180 (CFD) |
| BRUCE MORTENSEN ET AL., | : | |
|     Defendants. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Nationwide Mutual Insurance Company ("Nationwide"), filed this action seeking, inter alia, a declaratory judgment as to whether commercial liability policies it had issued to the defendants, former insurance agents for Nationwide and its affiliated companies, required it to defend lawsuits it had brought against those same defendants. The defendants filed a counterclaim for breach of contract, breach of fiduciary duty, and breach of the duty of good faith and fair dealing. The defendants allege in the counterclaim that Nationwide breached these duties by choosing which claims to assert in order to avoid an obligation under the commercial liability policies to defend the lawsuits it had brought against the defendants. Nationwide now moves for summary judgment on the defendants' counterclaim.

**I.     Background**

The defendants, Bruce Mortensen, David H. Donaldson, Patricia Bland, James Warner, Sr., James L. Birarelli, Bonnie Johnson, Johnson Agency Inc., and Robert York, are former insurance agents for Nationwide and its affiliated companies. Nationwide insured each of the former agents under a "Business Provider Insurance Policy." After Nationwide terminated the

agents, it brought suit against them [hereinafter "Liability Lawsuits"][1] alleging that they improperly retained Nationwide's proprietary information (including trade secrets, pricing information, policy holder information and files, marketing information and product information); violated their agency contracts and other agreements; unlawfully transmitted confidential information to Nationwide's competitors; improperly switched policyholders to other companies; wrongfully accepted appointments as insurance sales agents by other companies prior to the termination of their Nationwide agency; and committed computer crimes.

The defendants can be separated into two groups based on the different Liability Lawsuits to which they are parties. The first group consists of the original Liability Lawsuit complaints filed against Mortensen, Donaldson, and Bland in October 1999, which alleged the following: breach of the duty of loyalty; breach of contract; conversion; civil theft under Conn. Gen. Stat. § 52-564; breach of fiduciary duty; violations of the Connecticut Unfair Trade Practices Act and unfair competition; interference with contract rights and other business relations; interference with business expectancies; and unjust enrichment. The complaints in this first group were amended in November 1999 (the "November 1999 Mortensen, Donaldson, and Bland complaints") to add allegations of trademark infringement under the Lanham Act, 15 U.S.C. § 1051 et seq. Nationwide contends that following this amendment, counsel in the Liability

---

[1]Those suits were: Nationwide Mutual Insurance Company, et al. v. Bruce J. Mortensen, 3:99CV2007 (RNC); Nationwide Mutual Insurance Company, et al. v. David H. Donaldson, 3:99CV2006 (RNC); Nationwide Mutual Insurance Company, et al. v. Patricia Bland, 3:99CV2005 (RNC); Nationwide Mutual Insurance Company, et al. v. John Marcucilli, James Birarelli, James W. Warner, Sr., Marcucilli Agency, Inc., James L. Birarelli, Inc. and Moraine Group, Inc., 3:00CV870 (RNC); Nationwide Mutual Insurance Company, et al. v. Johnson Agency, Inc. and Bonnie Johnson, 3:00CV0619 (RNC); and Nationwide Mutual Insurance Company, et al. v. Robert York and the York Agency, Inc., CV-00-0092334-3 (Conn. Sup. Ct). These cases closed in September 2008, but are currently on appeal to the Second Circuit.

Lawsuits determined that the Lanham Act claims were not viable. On April 19, 2000, Nationwide Liability Lawsuit counsel, Jamie Fried, wrote a letter informing the agents' counsel that it would withdraw the Lanham Act claims because, due to an oversight in listing the former agents' names as Nationwide agents in the 2000-2001 SNET White Pages Directory, "we believe that such inclusion [of the names in the White Pages] eliminates our chances of success under the [Lanham] Act." See Def.'s Ex. 13. Thereafter, on August 17, 2000, the complaints were again amended, and were consolidated into one complaint (the "Consolidated Amended Bland Complaint"), in which the trademark infringement claims and other "references to advertising" were deleted.[2]

The second group of defendants consists of the Liability Lawsuit complaints against Warner, Birarelli, James Birarelli, Inc., Johnson, Johnson Agency, Inc., Marcucilli, and York, (the "Warner complaints").[3] Those suits alleged the following causes of action: breach of the duty of loyalty; breach of contract; conversion; civil theft under Conn. Gen. Stat. § 52-564; breach of fiduciary duty; violations of the Connecticut Uniform Trade Secrets Act; violations of the Connecticut Unfair Trade Practices Act and unfair competition; interference with contract

---

[2] The Consolidated Amended Bland Complaint is dated July 11, 2000. That complaint also added counts alleging violations of the Connecticut Uniform Trade Secrets Act and computer crimes.

[3] The Liability Lawsuits mentioned in this count are: Nationwide Mutual Insurance Company, et al. v. John Marcucilli, James Birarelli, James W. Warner, Sr., Marcucilli Agency, Inc., James L. Birarelli, Inc., and Moraine Group, Inc., 3:00CV870 (RNC); Nationwide Mutual Insurance Company, et al. v. Johnson Agency, Inc. and Bonnie Johnson, 3:00CV0619 (RNC); and Nationwide Mutual Insurance Company, et al. v. Robert York and York Agency, Inc., CV-00-0092334-3 (Conn. Sup. Ct). However, Marcucilli Agency, Inc., Moraine Group, Inc., and York Agency, Inc., are not named as defendants in the instant action. As above, these cases closed in September 2008, but are currently on appeal to the Second Circuit.

rights and other business relations; interference with business expectancies; computer crimes in violation of Conn. Gen. Stat. § 53a-251; and unjust enrichment. The Warner complaints never alleged claims under the Lanham Act.

The former agents requested that Nationwide defend them in the Liability Lawsuits under the Business Provider Insurance Policies. Between May and August of 2000, Nationwide wrote each of the former agents "reservation of rights" letters in which Nationwide: (1) stated its determination that it had no duty to defend the agents in the Liability Lawsuits; (2) explained that without waiving that coverage position, Nationwide was prepared to furnish a defense to the agents; and (3) reserved Nationwide's right to terminate its defense of the agents and, "in the event it is determined that there is no coverage for this action under the Policy, Nationwide reserves its right to recover amounts incurred in the defense of the action from you including legal fees and costs." See Pl.'s Ex. F, 1-8. The reservation of rights letters written to Mortensen, Donaldson, and Bland were written after Nationwide's counsel notified the former agents that it planned to withdraw the Lanham Act claims, but before leave to consolidate and amend had been granted; thus, in those letters, Nationwide took the position that it did not have a duty to defend even the Lanham Act claims.

Nationwide filed the instant action for a declaratory judgment that the Business Provider Insurance Policies do not entitle the agents to coverage or the costs of defense for the Liability Lawsuits. The defendants counterclaimed, alleging that Nationwide breached its duties to the agents by amending the Consolidated Amended Bland Complaint and drawing the Warner complaints to not include claims that would trigger Nationwide's duty to defend the former agents in the Liability Lawsuits under the terms of the Business Provider Insurance Policies.

Specifically, the defendants claim that Nationwide, in bad faith and in collusion with counsel handling the coverage issue, deleted or did not include the Lanham Act claims and other "references to advertising" to avoid a duty to defend the agents, and breached its promises in the reservation of rights letters to furnish a defense. Nationwide maintains its original position that it withdrew its trademark infringement claims in the Consolidated Amended Bland Complaint and did not allege them in the Warner complaints because its legal counsel determined Nationwide could not succeed on them given the mistaken inclusion of the former agents' names in the 2000-2001 SNET White Pages.

In a September 2002 Ruling, this Court issued a declaratory judgment that Nationwide's lawsuits against the defendants did not create a duty to defend. Nationwide Mut. Ins. Co. v. Mortensen, 222 F. Supp. 2d 173, 188 (D. Conn. 2002).[4] As to the counterclaim, the Court found

---

[4]The Court held that the Consolidated Amended Bland Complaint and the Warner Complaints did not state claims covered by the "advertising injury" provision of the Business Provider Insurance Policies. Specifically, the Court held:

> [T]he defendants have also failed to establish that these portions of the complaint and related materials constitute allegations of trademark or trade dress infringement. Moreover, even assuming the Liability Lawsuits did allege trademark or trade dress infringement, courts have construed policies similar to those issued by Nationwide to place claims involving trademark or trade dress infringement outside the scope of "advertising injury" when "advertising injury is defined as "misappropriation of advertising ideas or style of doing business."
> Advance Watch Co., Ltd. v. Kemper Nat'l Ins., Co., 99 F.3d 795 (6th Cir. 1996).

Id. at 185. In the years since the Court's Ruling on the motion for summary judgment, other courts have questioned the holding of Advance Watch, and classified it as the "minority view." See, e.g., Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 747 (3d Cir. 1999) (noting that Advance Watch has been "sharply criticized for ignoring the real contours of intellectual property litigation"); State Auto Prop. and Cas. Ins. Co. v. Travelers Indem. Co. of Am., 343 F.3d 249, 257 n.11 (4th Cir. 2003) (recognizing and rejecting the "minority view" of Advance Watch); Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc., 762 N.W.2d 572, 578 (Minn. 2009) (same). But see ShoLodge, Inc. v. Travelers Indem. Co. of Ill., 168 F.3d 256 (6th Cir.

"that the defendants have created a genuine issue of material fact as to whether Nationwide indeed provided a defense during the pendency of the coverage determination," but that "this alleged breach would not give rise to a continuing duty to defend uncovered claims, but rather, may now only present a cause of action for damages." Id. at 188-89. The Court also explained, however, that its ruling was without prejudice to Nationwide's moving for summary judgment at a later date as to the defendants' damages claims for Nationwide's breach of its promise to defend in the "reservation of rights" letters, its fiduciary duty, or its duty of good faith and fair dealing. Id. at 189 n.16, n.17, n.18. The Court specifically did not rule on the issues of whether Nationwide owed the defendants a fiduciary duty or a duty of good faith and fair dealing. Remaining[5] are the defendants' claims for damages based on Nationwide's alleged breach of its promise to defend in the "reservation of rights" letters and breach of fiduciary duty and duty of good faith and fair dealing by choosing which claims to assert against each defendant in an attempt to avoid triggering coverage under the Business Liability Insurance Policies. Accordingly, Nationwide now moves for summary judgment as to defendants' counterclaim.

## II.   Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there

---

1999) (maintaining the Advance Watch analysis); Callas Enter., Inc. v. Travelers Indem. Co. of Am., 193 F.3d 952, 957 (8th Cir. 1999) (adopting the Advance Watch analysis). Because this Court's original ruling first found the complaints did not even allege trademark or trade dress infringement, Nationwide, 222 F. Supp. 2d at 185, its holding stands regardless of the wisdom of the Advance Watch view.

[5]Also remaining following the Court's 2002 Ruling was Nationwide's claim in Count Three of its complaint that it is entitled to defense costs incurred in defending the Liability Lawsuits. Although the Court previously declined to grant summary judgment on this count, id. at 190, it now dismisses Count Three for the reasons explained *infra*, Part III.B.

are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)); accord Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

Where the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the nonmovant's claim.  Celotex, 477 U.S. at 323-25; Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 95 (2d Cir. 1998).  Once the movant has established a prima facie case demonstrating the lack of a genuine issue of material fact, the nonmoving party must provide enough evidence to support a jury verdict in its favor.  Anderson, 477 U.S. at 248; Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  A plaintiff, as the nonmovant, may not rely on conclusory statements or mere contentions that the evidence in support of summary judgment is not credible.  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).  Similarly, a plaintiff may not rest "merely on allegations or denials" in its complaint to demonstrate the existence of a genuine issue of material fact.  Fed. R. Civ. P. 56(e).  Therefore, after discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  Celotex, 477 U.S. at 323.  When addressing a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the

nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant, 923 F.2d at 982.

**III.    Discussion**[6]

    A.    Breach of Reservation of Rights Letters' Promise to Furnish a Defense & Reimbursement for Defense Costs

The defendants assert a claim for damages based on Nationwide's breach of its promises in the reservation of rights letters to furnish a defense in the Liability Lawsuits. This Court previously found a genuine issue of material fact as to whether Nationwide indeed provided a defense during the pendency of the coverage determination, and therefore also found a genuine issue of material fact as to Nationwide's Count Three claim that it is entitled to defense costs incurred in defending the Liability Lawsuits. Nationwide, 222 F. Supp. 2d at 189-90. The agents' counterclaim for breach of the reservation of rights letters' promises to defend is the converse of Nationwide's Count Three; Nationwide claims it is entitled to recoup the costs expended to defend under the reservation of rights, while the agents claim they are entitled to defense costs that Nationwide promised but did not actually pay.

The reservation of rights letters stated that Nationwide was prepared to furnish a defense to the defendants, but also stated that "in the event it is determined that there is no coverage for this action under the Policy, Nationwide reserves its right to recover amounts incurred in the

---

[6]At oral argument, the defendants withdrew their argument that Nationwide admitted the allegations in the counterclaim by failing to serve a timely answer pursuant to Fed. R. Civ. P. 7(a) and 12(a)(1)(B).

defense of the action from you including legal fees and costs." See Pl.'s Ex. F, 1-8. The agents were not required to sign and return the letters or otherwise actively assent to Nationwide's reservation. These letters did not cite to a provision of the Business Provider Insurance policy in which Nationwide claimed a right to recoup defense costs expended under a reservation of rights, nor has Nationwide pointed to such a policy provision.

This Court held in its September 2002 Ruling that there is no coverage for the Liability Lawsuits under the Business Provider Insurance Polices. Nationwide, 222 F. Supp. 2d at 188. Assuming Nationwide had a temporary duty to defend based on promises in the letters to furnish a defense,[7] but where this Court subsequently found Nationwide did not have a duty to defend, Nationwide claims that under the reservation of rights it should be able to recoup any expenditures it made in funding a defense in the Liability Lawsuit while awaiting a decision in the coverage action, and also that the agents cannot claim damages for breach of Nationwide's promise to defend.

Courts are divided on the issue of whether, having provided a defense pursuant to a reservation or rights, an insurer can recover the expended defense costs if it is subsequently determined that it had no duty to defend in the first instance. For example, in Gotham Insurance Co. v. GLNX, Inc., the Southern District of New York held that, where an insurer's "reservation of rights letter explicitly advised [insured] that it reserved its right to seek reimbursement in the event of a determination that it had no duty to defend," and the insured could offer "no evidence that it expressly refused to consent to [insurer's] reservation of rights as to reimbursement," the

---

[7]The Court previously found there is a genuine issue of material fact as to whether Nationwide indeed provided a defense during the pendency of the coverage determination. Nationwide, 222 F. Supp. 2d at 189.

insurer was entitled to reimbursement of the defense costs it had expended. No. 92 Civ. 6415 (TPG), 1993 WL 312243, *4 (S.D.N.Y. August 6, 1993); see also Dow Chem. Co. v. Assoc. Indem. Corp., No. 85-CV-10037-BC, 1991 WL 568033, *6 (E.D. Mich. December 6, 1991) ("It is in the public interest to encourage insurers, in cases involving questionable coverage, to tender a defense.  However, a rule which may permit the insurer to recover its costs is not inconsistent with the pubic policy.  There is no reason to penalize an insurer for acting in a way that is consistent with its insured's best interest and with the public interest merely because it is also consistent with the insurer's self-interest."). In contrast, the Third Circuit held the following:

> A rule permitting such recovery would be inconsistent with the legal principles that induce an insurer's offer to defend under reservation of rights.  Faced with uncertainty as to its duty to indemnify, an insurer offers a defense under reservation of rights to avoid the risks that an inept or lackadaisical defense of the underlying action may expose it to if it turns out there is a duty to indemnify.  At the same time, the insurer wishes to preserve its right to contest the duty to indemnify if the defense is unsuccessful.  Thus, such an offer is made at least as much for the insurer's own benefit as for the insured's.  If the insurer could recover defense costs, the insured would be required to pay for the insurer's action in protecting itself against the estoppel to deny coverage that would be implied if it undertook the defense without reservation.

Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc., 887 F.2d 1213, 1219-20 (3d Cir. 1989); see also St. Paul Mercury Ins. Co. v. Ralee Eng'g Co., 804 F.2d 520, 522-23 (9th Cir. 1986).

This Court agrees with the Third Circuit's rationale in Terra Nova, and finds that Nationwide cannot recoup expenditures made in fulfilling its promises to defend pursuant to the reservation of rights letters.  It was in Nationwide's own interest to provide a defense under the reservation of rights in order to avoid exposure had the Court held it did have a duty to defend.  If the Court were to now allow Nationwide to recoup defense costs, the defendants would be required to pay for the action Nationwide took to protect itself.  In these circumstances, in the

absence of a policy provision pointed to by Nationwide or active assent to the reservation by the defendants, the reservation of rights letters were not enough to impose a burden on the defendants to reimburse Nationwide for defense costs. Furthermore, there remains a genuine issue of material fact as to whether Nationwide indeed fulfilled its reservation of rights letters promise to defend during the pendency of any coverage litigation, and therefore whether the defendants can claim any damages for breach of that promise.

      B.      Breach of Fiduciary Duty

The defendants also assert a claim for breach of fiduciary duty for choosing which claims to assert against the defendants to avoid a duty to defend them in the Liability Lawsuits. While there may be some circumstances in which a fiduciary relationship may arise between an insurer and its insured, see United States v. Brennan, 183 F.3d 139, 150 (2d Cir. 1999), in general the relationship is not fiduciary, but is rather one of contractual good faith, see Harlach v. Metropolitan Property and Liability Ins. Co., 221 Conn. 185, 190 (1992). The circumstances here, including the reservation of rights letters, did not give rise to a fiduciary duty, and therefore the defendants' counterclaim on the basis of fiduciary duty fails.

      C.      Breach of the Duty of Good Faith and Fair Dealing

Finally, the defendants assert a claim for breach of the duty of good faith and fair dealing for Nationwide's alleged collusion between Liability Lawsuit counsel and coverage counsel to not assert claims that would trigger a duty to defend. As in all contractual relationships, the relationship between an insurer and insured is accompanied by a duty of good faith and fair dealing. See Grand Sheet Metal Products Co. v. Protection Mut. Ins. Co., 375 A.2d 428, 430 (Conn. Super. Ct. 1977); City of West Haven v. Liberty Mut. Ins. Co., 639 F. Supp. 1012, 1020

(D. Conn. 1986). A tort action for breach of the duty of good faith and fair dealing "permits recovery beyond the measure of damages for breach of contract." Doyle v. St. Paul Fire & Marine Ins. Co., Inc., 583 F. Supp. 554, 555 (D. Conn. 1984). The typical claim against an insurer for breach of the duty of good faith and fair dealing alleges that "the insurer unreasonably and in bad faith withholds payment of the claim of its insured." Doyle, 583 F. Supp. at 555; De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 Conn. 424, 433 (2004) ("To constitute a breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." (citations and alterations omitted)). In general, bad faith "implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose." Habetz v. Condon, 224 Conn. 231, 237 (1992) (citations and quotations omitted).

      The defendants' counterclaim does not present a run-of-the-mill claim of an insurer acting in bad faith in a coverage action. Rather, where Nationwide is both the direct cause of the defendants' need to defend a lawsuit and the insurer potentially tasked with financing that defense, defendants allege that Nationwide colluded in its dual roles as plaintiff and insurer to manufacture complaints that would not implicate its duty to defend. While it seems axiomatic that Nationwide, as the plaintiff, is the master of its own complaints in the Liability Lawsuits, the defendants argue that Nationwide breached its duty of good faith and fair dealing by not asserting trademark violations against the defendants in order to avoid having to pay the cost of defending

-12-

the lawsuit. The parties have not identified and the Court has not found a case with similar facts; the closest case is from the Seventh Circuit. In Lockwood International v. Volm Bag Co., Inc., a plaintiff brought several claims against an insured, some of which were covered by the insured's liability policy and others of which were not. 273 F.3d 741, 742 (7th Cir. 2001). The insurer then paid the plaintiff to amend her complaint and replead covered claims as uncovered claims so as to limit the insurer's liability for defense costs. Id. at 744. The Seventh Circuit held that in so doing, the insurer breached its duty of good faith and fair dealing to the insured by "paying its insured's adversary to eliminate the insured's remaining insurance coverage." Id. Writing for the court, Judge Posner explained:

> We have difficulty imagining a more conspicuous betrayal of the insurer's fiduciary duty to its insured than for its lawyers to plot with the insured's adversary a repleading that will enable the adversary to maximize his recovery of uninsured damages from the insured while stripping the insured of its right to a defense by the insurance company. The limits of coverage, whether limits on the amount to be indemnified under the policy or, as in the present case, on the type of claims covered by the policy, create a conflict of interest between insurer and insured.

Id. The court also said that the insured "had every right to settle the claims that gave rise to its duty to defend in the first place–the covered claims and the potentially covered claims in [the plaintiff's] suit–in order to avoid having to defend the claims in the same suit that were not actually or potentially covered." Id. at 746. The Lockwood facts are similar to the defendants' allegations of collusion here, as the defendants allege that the lawyers for Nationwide-the-insurer plotted with Nationwide-the-plaintiff a repleading that would strip the agents of their right to a defense by Nationwide.

      Assuming arguendo that a factual scenario in which an insurer drew its complaint against

a defendant in a liability lawsuit to avoid a duty to defend can form the basis of a claim of breach of an insurer's duty of good faith and fair dealing, the Court finds that the defendants have not presented a genuine issue of material fact that Nationwide acted in bad faith.  Nationwide has posited a perfectly plausible explanation for not asserting Lanham Act claims against the defendants; it claims that because Nationwide mistakenly listed the defendants as agents in the 2000-2001 SNET White Pages, it could not succeed on the Lanham Act claims, and it therefore withdrew them.  Additionally, in the reservation of rights letters issued prior to amending the complaint, Nationwide took the position that it did not have a duty to defend any of the Liability Lawsuit claims, including the Lanham Act claims.  The defendants have not presented evidence to rebut this explanation.

The defendants' evidence in support of a finding of bad faith is lacking.  First, the defendants rely upon deposition testimony from the Liability Lawsuits to allege that Nationwide had a general plan to "bleed [defecting agents] dry."  Second, they generally allege that Nationwide did not screen the lawyers that it retained to sue the insureds from its lawyers that it retained to provide it with a coverage opinion.  Specifically, the defendants argue that a jury could infer bad faith from the fact that Attorney Jamie Fried served as both coverage counsel and litigation counsel in similar litigation against a former Nationwide agent in New York courts. Ms. Fried, as an attorney in the Liability Lawsuits concerning the defendants in this case, was the attorney who informed defendants' counsel that Nationwide would drop the Lanham Act claims. Ms. Fried never entered an appearance in the instant coverage action.  The defendants also allege, but provide no evidence to support, that "shortly after the hearing concerning Fried's request for leave to amend the complaint, [Fried's law firm] forwarded a copy of the hearing transcript to

coverage counsel." Finally, the defendants claim as support of collusion that "[j]ust days after the leave to amend was granted in the liability lawsuits, Nationwide's coverage counsel moved for summary judgment seeking denial of coverage based upon the amended complaint." Although in deciding a motion for summary judgment the Court must resolve all inferences in favor of the non-moving party, here the defendants' evidence does not give rise to an inference of bad faith. See Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999) ("[Courts] must also carefully distinguish between evidence that allows for a reasonable inference [] and evidence that gives rise to mere speculation and conjecture. This undertaking is not one of guesswork or theorization. After all, an inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." (quotations and citations omitted)). That Fried may have served as coverage counsel and liability counsel in another case, without more, means nothing about her role or the role of other attorneys in this coverage action. The defendants have presented no evidence that Nationwide's filing their motion for summary judgment in the instant action shortly after it was granted leave to amend to the Consolidated Amended Bland Complaint was anything more than coincidental. Based on the evidence before the Court, no reasonable jury could find that Nationwide's Liability Lawsuit counsel colluded in bad faith with its coverage counsel to deliberately avoid a duty to defend.

**IV.     Conclusion**

For the foregoing reasons, the plaintiff's supplemental motion for summary judgment [Dkt. # 157] is GRANTED IN PART and DENIED IN PART.  Remaining is the defendants' counterclaim for breach of the reservation of rights letters' promises to defend.  Additionally, Nationwide's claim in Count Three of its complaint to recoup defense costs incurred in defending the Liability Lawsuits is dismissed.

SO ORDERED this   24th   day of August 2009, at Hartford, Connecticut.


/s/Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**